# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAYA,<br><br>                                    Plaintiff,<br><br>v.<br><br>DAVID BARKA; NOORI BARKA; EVELYN BARKA; CALBIOTECH, INC.; CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; CALBIOTECH, INC. PENSION PLAN; ERBA MANNHEIM,<br><br>                                  Defendants. | Case No.: 19-cv-2295-WQH-AHG<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the Motion to Dismiss Plaintiff's Complaint, or Motion for a More Definite Statement and Motion to Strike Portions of Plaintiff's Complaint filed by Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc., Calbiotech, Inc. 401(k) Profit Sharing Plan, and Calbiotech, Inc. Pension Plan. (ECF No. 14).

**I.   BACKGROUND**

    On December 2, 2019, Plaintiff Robert Raya, proceeding *pro se* and in forma pauperis, filed a Complaint against Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc. ("Calbiotech"), Calbiotech, Inc. 401(k) Profit Sharing Plan ("401(k) Plan"), Calbiotech, Inc. Pension Plan ("Pension Plan"), and Erba Mannheim. (ECF No. 1).

In the Complaint, Raya alleges that he is a former employee of Defendant Calbiotech. Raya alleges that he worked as a scientist for Calbiotech beginning in May 2008 and ending in late 2016. Raya alleges that Calbiotech is the administrator of the Pension Plan, which took effect in September 2008. Raya alleges that the Pension Plan provided that "[a]ll employees are eligible" to enroll in the Pension Plan. (*Id.* ¶ 16). Raya alleges that the Pension Plan did not "describe any exclusionary provisions" that could apply to Raya. (*Id.* ¶ 17). Raya alleges that he was eligible to enroll in the Pension Plan but "was never allowed to enroll." (*Id.* ¶ 18). Raya alleges that between 2008 and "at least 2017," Calbiotech concealed the existence of the Pension Plan from eligible employees. (*Id.* ¶ 20).

Raya alleges that the only employees allowed to enroll in the Pension Plan were four immediate family members of Defendant Noori Barka, the founder and President/CEO of Calbiotech. Raya alleges that he discovered the existence of the Pension Plan in 2018 and requested that Calbiotech and Defendant Erba Mannheim, which acquired Calbiotech in April 2017, retroactively enroll Raya in the Pension Plan. Raya alleges that Calbiotech and Erba Mannheim determined that Raya was ineligible to enroll in the Pension Plan and denied Raya's claim for benefits. Raya alleges that Calbiotech and Erba Mannheim based their determination and denial of benefits on fraudulent and backdated documents that do not match the original Pension Plan documents Calbiotech filed with the IRS.

Raya alleges that Calbiotech is also the administrator of the 401(k) Plan, which took effect in 2008. Raya alleges that he enrolled in the 401(k) Plan in 2010. Raya alleges that David Barka, the Vice President of Calbiotech, told Raya in 2009 and 2010 that all employer contributions to employees' 401(k) accounts were "completely discretionary." (*Id.* ¶ 31). Raya alleges that he made written requests to Calbiotech for 401(k) Plan documents "as early as 2009," but "David Barka and Calbiotech failed to provide a written plan description for any retirement plan during the entire 8 ½ years of Mr. Raya's employment." (*Id.* ¶ 30). Raya alleges that 401(k) Plan documents Raya acquired in 2018 "describe employer contributions as automatic," rather than discretionary. (*Id.* ¶ 32). Raya alleges that Calbiotech's failure or refusal to provide Raya with 401(k) Plan documents

"prevented Mr. Raya from identifying hundreds of missed contributions to his 401(k) account as Calbiotech failed to make their mandatory contributions year after year." (*Id.* ¶ 33). Raya alleges that between July 9, 2018, and January 6, 2019, he made nine "separate requests that Calbiotech provide a record of deposits and payments made to his 401(k) account during the time of his employment." (*Id.* ¶ 50). Raya alleges that Calbiotech "falsely claim[ed] that the data Mr. Raya requested is held only by their [third] party service provider, Principal Financial" and that Calbiotech was "waiting for information from Principal [Financial] in order to respond to Mr. Raya's request." (*Id.* ¶¶ 51, 53).

Raya further alleges that in 2012, he took out a loan from his 401(k) and began to repay the loan through automatic deductions from his biweekly paychecks. Raya alleges that between 2012 and 2016, $85.36 was deducted from each of Raya's paychecks to repay the 401(k) loan. Raya alleges that David Barka was responsible for remitting the entire $85.36 to Principal Financial, the third-party administrator and service provider of the 401(k) Plan and Raya's 401(k) loan. Raya alleges that David Barka remitted only $14.86 of each biweekly deduction to Principal Financial and kept the remaining $70.50 for David Barka's personal use.

Raya alleges that he was terminated from his position at Calbiotech on November 29, 2016. Raya alleges that David Barka told Raya that "things were not working out" and that Raya's position was being eliminated. (*Id.* ¶ 45). Raya alleges that Calbiotech "was not honest when describing [its] motivations for terminating Mr. Raya." (*Id.* ¶ 47). Raya alleges that Calbiotech did not eliminate Raya's position and began searching for an applicant to replace Raya "immediately after, or possibly before" Raya was terminated. (*Id.*). Raya alleges that "David Barka fired Mr. Raya in an effort to prevent Mr. Raya from exercising his protected right to request and receive [ ] [d]ocuments describing Calbiotech's 40l(k) Plan and to release Calbiotech from any liability faced as a result of failing to provide those plan documents." (*Id.* ¶ 48).

Raya brings claims against 1) Calbiotech and Erba Mannheim for statutory penalties under the Employee Retirement Income Security Act of 1974 ("ERISA") for failing to

provide Raya with documents describing the Pension Plan[1]; 2) David Barka, Noori Barka, Evelyn Barka, Calbiotech, and Erba Mannheim for breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(l)(A), (a)(1)(B), (a)(1)(D), and 1105, and breach of fiduciary duty and fraud under California state law; and 3) David Barka, Noori Barka, Calbiotech, and Erba Mannheim for ERISA interference under 29 U.S.C. § 1140. Raya seeks statutory penalties, damages, including punitive damages, injunctive relief, and declaratory relief.

On February 14, 2020, Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, the 401(k) Plan, and the Pension Plan[2] filed a Motion to Dismiss Plaintiff's Complaint, or Motion for a More Definite Statement and Motion to Strike Portions of Plaintiff's Complaint. (ECF No. 14). Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Raya fails state a claim upon which relief can be granted.[3] On March 10, 2020, Raya filed an Opposition to Defendants' Motion to Dismiss. (ECF No. 15). On March 16, 2020, Defendants filed a Reply. (ECF No. 16).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state

---

[1] On November 19, 2018, Raya filed a Complaint in a related case, *Raya v. Calbiotech, Inc.*, Case No. 18-cv-2643-WQH-AHG, against Calbiotech due to Calbiotech's alleged failure to provide Raya with 401(k) Plan documents.

[2] The docket does not reflect that Defendant Erba Mannheim has been served. (*See* ECF No. 13 (summons returned unexecuted as to Erba Mannheim)).

[3] Defendants request that the Court take judicial notice of 1) the April 26, 2012, Pension Plan Adoption Agreement; 2) the Separation Agreement and General Release between Raya and Calbiotech; 3) the April 30, 2019, written determination of Calbiotech denying Raya's claim for benefits; 4) the 401(k) Plan document (ECF No. 14-2 at 2); 5) the Complaint filed by Raya in *Raya v. Calbiotech, Inc.*, Case No. 3:18-cv-2643-WQH-AHG; and 6) forms filed by Raya with the California Employment Development Department (ECF No. 16-1 at 2). Judicial notice of the requested documents is unnecessary for this Order. Defendants' requests for judicial notice are denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

**III.  401(k) PLAN AND PENSION PLAN AS DEFENDANTS**

Defendants contend that the Court should dismiss the 401(k) Plan and Pension Plan as Defendants because Raya names the 401(k) Plan and the Pension Plan in the caption of the Complaint but does not bring any claim against them. "[T]he determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption." *Hoffman v. Halden*, 268 F.2d 280, 304 (9th Cir. 1959), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). Raya names the 401(k) Plan and the Pension Plan in the caption of the Complaint

and in the "Parties" section of the Complaint. (*See* ECF No. 1 at 1 and ¶¶ 12, 13). However, Raya does not bring any claim in the body of the Complaint against the 401(k) Plan or the Pension Plan. Defendants' Motion to Dismiss the Calbiotech, Inc. 401(k) Profit Sharing Plan and the Calbiotech, Inc. Pension Plan 401(k) Plan as Defendants is granted.

## IV. ERISA STATUTORY PENALTIES CLAIM

Raya brings his first cause of action for ERISA statutory penalties against Defendants Calbiotech and Erba Mannheim for failing to provide Pension Plan documents[4] to Raya within thirty days of his written request. Defendants contend that Raya's claim for statutory penalties is barred by the three-year statute of limitations. Raya contends that the Court should toll the statute of limitations because Raya "did not discover irregularities connected to Calbiotech retirement plans until January of 2018 . . . [and] did not suspect fraud until February of 2018 as [D]efendants adopted a policy of refusing to provide information or to communicate in any meaningful way with [Raya]." (ECF No. 15 at 4).

Under ERISA, the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Any plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper . . . ." 29 U.S.C. § 1132(c)(1); *see* 29 C.F.R. § 2575.502c-1 (increasing maximum civil penalty from $100 per day to $110 per day).

---

[4] Raya's ERISA statutory penalties claim is based only upon Calbiotech and Erba Mannheim's alleged failure to provide *Pension Plan* documents. Raya brings a claim against Calbiotech for its alleged failure to provide *401(k) Plan* documents in *Raya v. Calbiotech, Inc.*, Case No. 18-cv-2643-WQH-AHG.

"[T]he recovery of up to [$110] per day provided to a participant or beneficiary by ERISA § 1132(c) is not a penalty or forfeiture, but is instead a remedy sought by an individual as compensation to address a private wrong." *Stone v. Travelers Corp.*, 58 F.3d 434, 439 (9th Cir. 1995) (internal quotation marks omitted). Accordingly, "the three-year limitation of Cal. [ ] Civ. Proc. Code § 338(a) applies." *Id.*; *see* Cal. Code. Civ. Proc. § 338(a) (providing a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture").

Raya alleges that Defendant Calbiotech, which was acquired by Defendant Erba Mannheim in 2017, is the administrator of the Pension Plan. Raya alleges that "[i]n 2009, Mr. Raya emailed a request for a written description describing Calbiotech's retirement plan to David Barka. Mr. Raya's request was ignored." (ECF No. 1 ¶ 61). Raya further alleges that "[i]n July and August of 2016, Mr. Raya made written requests for copies of the plan rules describing Calbiotech's retirement plan. Mr. Raya's requests were ignored or denied." (*Id.* ¶ 40). Taking Raya's factual allegations as true, Raya requested documents from Calbiotech in 2009, and in July of August of 2016, and never received any documents. Taking Raya's factual allegations as true, Raya possessed all of the information necessary to bring a claim against Calbiotech for ERISA statutory penalties in September 2016, at the latest. Raya filed the Complaint in this case on December 2, 2019, after the three-year statute of limitations expired. Raya fails to state facts that support tolling the statute of limitations. Raya was aware in 2009 and 2016 that he requested documents and that Calbiotech did not provide any documents within thirty days of Raya's written requests. The Court concludes that Raya's claim for ERISA statutory penalties is barred by the statute of limitations. Defendants' Motion to Dismiss Raya's first cause of action for ERISA statutory penalties is granted.

## V. ERISA BREACH OF FIDUCIARY DUTY CLAIMS

Raya brings his second and third causes of action for breach of fiduciary duty against Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, and Erba Mannheim under 29 U.S.C. § 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D). Defendants contend that § 1104

7

19-cv-2295-WQH-AHG

does not provide for a civil claim. Defendants contend that 29 U.S.C. § 1132(a) provides the exclusive remedies for rights guaranteed under ERISA, and Raya does not bring a breach of fiduciary duty claim under § 1132(a). Defendants further contend that Raya's claims for breach of fiduciary duty under ERISA are time-barred. Raya contends that the Court should toll the applicable statute of limitations.

29 U.S.C. § 1104 provides the "[p]rudent man standard of care" by which retirement benefit plan fiduciaries must abide. 29 U.S.C. § 1104(a). Section 1104(a)(1)(A) states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Section 1104(a)(1)(B) states that a fiduciary shall discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104 (a)(1)(B). Section 1104(a)(1)(D) states that a fiduciary shall discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV." 29 U.S.C. § 1104(a)(1)(D).

A plaintiff who alleges that a fiduciary violated § 1104(a) may bring a claim under 29 U.S.C. § 1132(a). *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990) ("Congress intended [§ 1132(a)] to be the exclusive remedy for rights guaranteed under ERISA . . . ."). 29 U.S.C. § 1132(a)(1)(B) authorizes a civil action to be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under [29 U.S.C. § 1109]," which provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary . . . .

29 U.S.C. § 1109(a). 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

Subdivision (a)(2) differs from subdivision (a)(3) in that subdivision (a)(2) "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254, 256 (2008)). By contrast, subdivision (a)(3) allows a plaintiff to bring an individual claim for breach of fiduciary duty. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009) ("Unlike 29 U.S.C. § 1132(a)(2), which requires that relief sought must be on behalf of the entire plan, the Supreme Court has held that a participant or beneficiary has standing pursuant to section 1132(a)(3) to seek individual recovery in the form of appropriate equitable relief." (internal quotation marks omitted)). Subdivision (a)(3) is a "catchall provision[ ] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Moyle v. Liberty Mut. Retirement Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (alterations in original) (quotation omitted).

In this case, Raya alleges that Defendants "violated 29 U.S.C. 1104 . . . ." (ECF No. 1 ¶¶ 63, 64, 65). Raya does not identify any claim under § 1132(a)(1)(B), (a)(2), or (a)(3). In a similar case, the Court of Appeals for the Ninth Circuit held that a district court properly granted summary judgment in the defendant's favor where the plaintiff improperly asserted a claim under a substantive ERISA provision rather than under §

1132(a) and failed to correct the error in subsequent pleadings. *May v. Honeywell Int'l, Inc.*, 331 F. App'x 526, 530 (9th Cir. 2009).

In addition, each subdivision of § 1132(a) has a different pleading requirement, a different statute of limitations, and a different administrative exhaustion requirement. *Compare* 29 U.S.C. § 1113 (providing a three or six-year statute of limitations for an ERISA breach of fiduciary duty claim), *with Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 648 (9th Cir. 2000) (explaining that "California's [four-year] statute of limitations for suits on written contracts, California Code of Civil Procedure Section 337, provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California"); *see Wise*, 600 F.3d at 1189 (explaining that "[t]o allege a fiduciary breach under § 1132(a)(2), [the plaintiff] must allege that the fiduciary injured the benefit plan or otherwise 'jeopardize[d] the entire plan or put at risk plan assets'" (third alteration in original) (quoting *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988))); *see also Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (explaining that before bringing suit under § 1132(a)(1)(B), "an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures . . .'" (quoting *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995))). The Court cannot conclude that Raya has adequately and timely stated any claim for breach of fiduciary duty under ERISA because Raya fails to identify any subdivision of § 1132(a) under which he seeks recovery. The Court finds that Raya fails to state a claim for breach of fiduciary duty under ERISA. Defendants' Motion to Dismiss Raya's second and third claims for breach of fiduciary duty is granted.

## VI.  ERISA INTERFERENCE CLAIM

Raya brings his fourth cause of action for ERISA interference under 29 U.S.C. § 1140 against Defendants David Barka, Noori Barka, Calbiotech, and Erba Mannheim based on his allegedly unlawful termination. Defendants contend that the Complaint states

the elements of an interference cause of action without supporting factual allegations. Raya contends that adequately states a claim for ERISA interference based upon his wrongful termination.

29 U.S.C. § 1140 provides:

> "It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this title, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this title . . . .The provisions of section 502 [29 U.S.C. § 1132] shall be applicable in the enforcement of this section."

"The purpose of [§ 1140] is to 'prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan.'" *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)). To demonstrate a violation of § 1140, the plaintiff must show 1) he was engaged in activity protected under ERISA; 2) he suffered an adverse employment action; and 3) a causal link exists between the employee's protected activity and the employer's adverse action. *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989). "A claimant must show that employment was terminated because of a specific intent to interfere with ERISA rights in order to prevail under [§ 1140]; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990) (citations omitted).

In this case, Raya alleges that he requested copies of Calbiotech's retirement plans in July and August 2016. Raya alleges that Calbiotech terminated Raya's employment on November 29, 2016. Raya alleges that David Barka told Raya that he was terminated because "things were not working out" and because his position had been eliminated. (ECF No. 1 ¶ 45). Raya alleges that his position had not been eliminated, and another employee was hired to fill Raya's position in February 2017. Raya alleges that "David Barka fired

Mr. Raya in an effort to prevent Mr. Raya from exercising his protected right to request and receive Plan Documents describing Calbiotech's 40l(k) Plan and to release Calbiotech from any liability faced as a result of failing to provide those plan documents." (*Id.* ¶ 48). Raya fails to allege facts that support a reasonable inference that Defendants acted with the "specific intent to interfere with [Raya's] ERISA rights." *Dytrt*, 921 F.2d at 896 (citation omitted). Raya's allegation that Defendants terminated Raya's position in order to prevent him from exercising his ERISA rights is not supported by any facts connecting the request for plan documents and subsequent termination. Further, Raya fails to identify any claim under § 1132(a). *See May*, 331 F. App'x at 530 (holding that the district court properly granted summary judgment in defendant's favor where the plaintiff "asserted one claim under [ ] 29 U.S.C. § 1140, rather than under [§ 1132(a)] . . . [and] failed to correct this error in any of her pleadings . . ."). Accordingly, the Court cannot determine that Raya states a claim entitling him to any relief. The Court finds that Raya fails to state a claim for ERISA interference. Defendants' Motion to Dismiss Raya's fourth claim for ERISA interference is granted.

## VII. CO-FIDUCIARY BREACH CLAIM

Raya brings his fifth cause of action against Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, and Erba Mannheim for co-fiduciary breach of fiduciary duty under 29 U.S.C. § 1105. Defendants contend that Raya's co-fiduciary breach claim fails because Raya fails to state any underlying claim for breach of fiduciary duty.

29 U.S.C. § 1105(a) provides:

> In addition to any liability which he may have under any other provision of this part [29 U.S.C. §§ 1101 et seq.], a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> **(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> **(2)** if, by his failure to comply with section 404(a)(1) [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his

> status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> **(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

A plaintiff cannot state a claim for co-fiduciary liability without first stating a claim for breach of fiduciary duty under ERISA. 29 U.S.C. § 1105(a). The Court has determined that Raya fails to state a claim for breach of fiduciary duty. Accordingly, Raya's co-fiduciary breach claim fails as a matter of law. Defendants' Motion to Dismiss Raya's fifth cause of action for co-fiduciary breach is granted.

## VIII. STATE LAW CLAIMS

Raya's remaining claims arise under California law and include causes of action for state law breach of fiduciary duty and fraud. The federal supplemental jurisdiction statute provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction" for a number of reasons, including if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

"Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims." *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the [*United Mine Workers of America v.*] *Gibbs*[,] [383 U.S. 715 (1966),] values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quotation omitted). "'[I]n the usual case in which federal-law

claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1970)).

Raya's federal claims have been dismissed. The Court declines to exercise supplemental jurisdiction over Raya's state law claims. Defendants' Motion to Dismiss is granted. Raya's Complaint is dismissed without prejudice.

## IX.   CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 14) is granted. Raya's Complaint is dismissed without prejudice. No later than thirty (30) days from the date of this Order, Raya may file a motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c). If no motion is filed, the Clerk shall close the case.

Dated: June 25, 2020

*[signature]*
Hon. William Q. Hayes
United States District Court