Name:     Robert Raya
Address:  5757 College Ave., #U
Address:  San Diego, CA 92120
Phone:    (619) 862-4376
Email:    robertraya@gmail.com
Plaintiff: In Pro Se

FILED
SEP 08 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raya, Robert,<br><br>                       Plaintiff,<br><br>v.<br><br>Barka, David; Barka, Noori; Barka, Evelyn; Calbiotech, Inc.; Calbiotech, Inc. 401(k) Profit Sharing Plan; Calbiotech, Inc. Pension Plan<br><br>                       Defendants. | Case No.: 19-cv-2295-WQH-AHG<br><br>**Second Amended ERISA Complain** |

## Introduction

1.      The plaintiff, Robert Raya, brings this civil action against the defendants, under the Employee Retirement Income Security Act of 1974 (ERISA). The Plaintiff also brings state claims of Fraud, Conversion, and Breach of Fiduciary Duty, which are independent of the administration or operation of the ERISA plans described below and are exempt from ERISA preemption.

2.      Mr. Raya seeks relief pursuant to 29 U.S.C. 1132(a) for Defendant's violations of ERISA, including, inter alia, Breach of Fiduciary Responsibilities, and Interference. Mr. Raya also seeks relief for state claims of fraud, conversion, and

1

breach of fiduciary duty. Mr. Raya seeks penalties and damages for state claims including compensatory damages, punitive damages, and all appropriate penalties and damages available under the law.

## Jurisdiction

3. Jurisdiction is conferred upon this court by 28 U.S.C. 1331, which gives federal district courts original jurisdiction over all civil actions arising under the laws of the United States. Federal question jurisdiction arises pursuant to 29 U.S.C. 1132(e) which gives district courts exclusive jurisdiction over civil actions brought under ERISA.

4. Pendent jurisdiction of related activities under state claims necessarily tried together to control litigation and provide an efficacious and fair judgment applies.

## Venue

5. Venue is proper pursuant to 29 U.S.C. 1132(e) because the plans were administered in the county of San Diego and the violations and breaches took place in the county of San Diego.

## Parties

6. **Robert Raya**, the **Plaintiff,** is a former employee of Calbiotech, Inc. and participant in the Calbiotech, Inc. 401K Profit Sharing Plan and has been eligible to be a participant as defined by ERISA, 29 U.S.C. 1002(7) in the Calbiotech, Inc. Pension Plan. Mr. Raya resides in San Diego, CA, in the county of San Diego.

7. **Defendant Calbiotech, Inc.** is a private, for-profit California biotech company founded in 1997. The company is located at 1935 Cordell Ct., El Cajon, CA 92020. Calbiotech, Inc. is the plan sponsor, a fiduciary, and is identified in plan

documents as the **Plan Administrator** as defined by ERISA, 29 U.S.C. 1002(16)(A). Calbiotech, Inc. was acquired by **Erba Mannheim** in April of 2017.

8.  **Defendant Noori Barka** is the founder of Calbiotech and served as company President/CEO. Noori Barka is a named **plan fiduciary** and plan trustee. Noori Barka is one of only two company officers who have held and exercised discretionary control and authority over plan management, plan assets, and plan operation for Calbiotech, Inc.'s retirement plans.

9.  ~~**Defendant David Barka** (son of Noori Barka) is Vice President of Calbiotech,~~ Inc. and Interim CEO of Erba Diagnostics. David Barka is a named **plan fiduciary** and plan trustee for each of Calbiotech Inc.'s retirement plans. David Barka is one of only two company officers (along with Noori Barka) who have held and exercised discretionary control and authority over both of Calbiotech, Inc.'s retirement plans, however David Barka is the individual who is primarily responsible for exercising discretionary authority and control with respect to the day to day operation and administration for both plans.

10. **Defendant Evelyn Barka** (wife of Noori Barka) is a named Trustee and a **fiduciary** for the Calbiotech, Inc. Pension Plan and the Calbiotech, Inc. 401(k) Profit Sharing Plan.

11. **Defendant Calbiotech, Inc. 401(k) Profit Sharing Plan** is a defined contribution retirement plan as defined by ERISA, 29 U.S.C. 1002(A), which went in to effect in 2008 and is offered to employees of Calbiotech, Inc.

12. **Defendant Calbiotech, Inc. Pension Plan** is a defined benefit retirement plan as defined by ERISA, 29 U.S.C. 1002(A), which went in to effect in 2008.

## Facts

13. Mr. Raya worked as a scientist for Calbiotech for 8 ½ years beginning in May of 2008 and ending in December 2016. Mr. Raya took one 6-month leave between March 2011 and September 2011.

### Qualified Pension Plan Carefully Concealed And Eligible Employees Are Not Enrolled

14. **The Calbiotech, Inc. Pension Plan** went in to effect September 1, 2008. The Plan Document (**Exhibit 1**) states: "All employees are eligible employees…".

15. The Plan Document does not describe any exclusionary provisions that could apply to Mr. Raya. Mr. Raya was a regular, full-time, non-union employee of Calbiotech, Inc. during his entire employment between 2008 and December 2016. Mr. Raya is a U.S. citizen with the legal right to work in the United States.

16. Despite the Pension Plan being in effect since 2008 and, despite the clear language in the plan document, which confers eligibility on all regular employees, Mr. Raya, and other eligible employees were not allowed to enroll in the Calbiotech, Inc. Pension Plan between 2008 through at least 2017.

17. No information, regarding this plan, was provided to Mr. Raya, and the very existence of the plan remained a secret during the time of his employment.

18. Calbiotech, Inc. intentionally hid the existence of the Pension plan from eligible employees. Upon information and belief, no Pension Plan information was provided to any regular employee of Calbiotech, Inc., during this time (2008 through at least 2017), except for the four other plan participants who happen to be immediate family members of owner/CEO Noori Barka.

19. Due to the intentional concealment of the Pension Plan, eligible employees were never enrolled, allowing Calbiotech, Inc.;'s owners to reap the relatively generous retirement benefits (and substantial corporate tax benefits), while avoiding plan requirements to make employer contributions to the retirement accounts of their regular employees.

4

20. Mr. Raya discovered the Pension Plan in January 2018 while searching for information on Calbiotech, Inc.'s other retirement plan, the Calbiotech, Inc. 401K Profit Sharing Plan, a Defined Contribution Plan. Mr. Raya immediately asked Calbiotech, Inc. to review his eligibility for the Pension Plan.

21. Calbiotech, Inc. and Erba Mannheim's initial response in January 2018, declared Mr. Raya ineligible for the Pension Plan due to an exclusionary provision in the plan document. However, the exclusionary provision cited by Calbiotech, Inc. was only inserted into the plan after a 2011 Plan rewrite.

22. The provision identified as preventing Mr. Raya's enrollment did not exist before 2011 and could not have prevented Mr. Raya's enrollment when he became eligible to enroll in 2008.

23. Mr. Raya submitted a claim for benefits in April 2018, in which he asked to be enrolled in the Pension Plan as of the date of his eligibility in 2008. Calbiotech and Erba Mannheim missed their 120-day response deadline, and waited 9 months before responding to Mr. Raya's claim in January 2019.

24. In their January 2019 response, Calbiotech and Erba Mannheim changed their explanation as to why Mr. Raya was ineligible to participate in the Pension Plan. Defendants no longer cited the exclusionary provision inserted in to the plan document after a 2011 rewrite.

25. In their January 2019 response, Defendants claimed to have just discovered a plan Amendment executed in Dec. 2008, which limited Pension Plan eligibility to the CEO and four named immediate family members of the CEO, plus two other named employees, while excluding all other employees.

26. Calbiotech, Inc. claims they wrote and executed the suspicious amendment in 2008, but then claim the plan Administrator lost all copies of the amendment sometime after 2008.

27. The amendment is missing from the complete Pension Plan Documents that the plan Administrator provided to Mr. Raya in 2018 (**Exhibit 1**), and Defendants

made no mention of the amendment's existence until they rediscovered it, just before responding to Mr. Raya's claim in Jan 2019.

28. The document describing this discriminatory amendment displays signs of backdating. Calbiotech, Inc. claims the document was written and executed in 2008, yet it contains the name of an employee who was unknown to the company before she was hired for the first time in 2011.

29. The Pension plan provisions described in Plan Documents provided to Mr. Raya by the plan Administrator in 2018 do not match, (and are far less generous than), the original plan provisions as described in the Pension Plan's Form 5500 filed with IRS and made public on the Department of Labor's website.

**Regular Employees Enrolled in 401(k) Plan, However, the 401(k) Plan Employer Contribution Mandate is Concealed and Never Made**

30. The Calbiotech, Inc. 401(k) Profit Sharing Plan went in to effect September 1, 2008 and Mr. Raya was enrolled in 2010.

31. Between 2009 and 2016, David Barka was the company officer who managed the day-to-day operations of the 401(k) Plan.

32. Despite written requests from Mr. Raya as early as 2009, and through 2016, David Barka or Calbiotech, Inc. never provided an SPD or any Plan Document describing the 401(k) Plan to Mr. Raya or other regular employees.

33. David Barka provided oral descriptions of the 401(k) plan when the plan was introduced and rolled out in 2009 and 2010 and throughout Mr. Raya's participation through 2017. For all oral descriptions for which Mr. Raya was present, David Barka consistently described all employer contributions as being totally and completely discretionary.

34. Plan documents finally acquired in 2018 describe employer contributions as mandatory or automatic.

35. Calbiotech, Inc.'s failure or refusal to provide Plan Documents over the course of nearly 9 years prevented Mr. Raya from identifying hundreds of missed or reduced contributions to his 401(k) account as Calbiotech failed to make their mandatory contributions year after year.

### Embezzlement - Conversion of Payroll Deductions

36. In 2012, Mr. Raya took out a loan from his 401(k) and began repaying his loan through automatic deductions from each of his biweekly payroll checks.

37. Between 2012 and 2016, $85.36 was deducted from each one of Mr. Raya's biweekly payroll checks (**Exhibit 2**) for the purpose of making payments towards his 401(k) loan.

38. The money removed from Mr. Raya's check was given to David Barka. David was responsible for remitting the entire payment to Principal Financial, the third party service provider and administrator of the 401(k) Plan and 401(k) Loans.

39. Principal Financial has provided a complete record (**Exhibit 2**) of all loan payments and deposits to Mr. Raya's 401(k) account between 2012 and 2016. The record shows that only $14.86 out of each payroll deduction of $85.36 was remitted to Principal.

40. As an officer of the company and a fiduciary, David Barka took advantage of the trust placed in him while he temporarily possessed Mr. Raya's money and betrayed that trust by converting $70.50 from each of Mr. Raya's payments for his own personal use.

41. This transaction was repeated every other week for almost 5 years. Despite the clear evidence provided by Principal, Calbiotech and Erba Mannheim continue to insist all of Mr. Raya's money was sent to Principal but, so far, they have presented no evidence to support their claim or counter the official record provided by Principal Financial.

**Interference / Retaliation**
**Wrongful Termination**

42. Mr. Raya received notice of his termination on November 29, 2016. On the evening of Nov 29, 2016, David Barka sent Mr. Raya a text message notifying him of his immediate termination.

43. In the months and weeks just prior to termination, beginning in July of 2016, Mr. Raya made multiple written requests for Plan Documents describing the Calbiotech, Inc. 401(k) Profit Sharing Plan.

44. Mr. Barka did not give a specific reason for the termination on Nov 29, and only explained, "It's time we part ways".

45. In a phone call on Nov 30, 2016, David explained the reason Mr. Raya was terminated was that "things were not working out".

46. On or around Dec 1, 2016, David Barka explained to Mr. Raya that his position was eliminated and Mr. Raya was, in effect, laid off.

47. Mr. Raya made new requests for Plan Documents on Dec 7 and Dec 13, 2016 in order to rule out his suspicions that his termination was connected to his request for documents and, thereby, unlawful.

48. Calbiotech provided a fraudulent SPD to Mr. Raya on Dec 14, 2016 (**Exhibit 3**). This SPD falsely described employer contributions as discretionary and the SPD omitted existing mandatory or automatic employer contributions.

49. This fraudulent SPD led Mr. Raya to reasonably believe that his termination was not an attempt to prevent him from receiving or viewing Plan Documents and not related to his demand for Plan Documents.

50. In January 2017, Calbiotech, Inc. did not contest or deny to the California Employment Development Department that Mr. Raya was terminated because his position was eliminated. This caused Mr. Raya to further accept the pretextual excuse that his position was eliminated.

51. In Jan 2019, Calbiotech provided Mr. Raya with a complete administrative record (**Exhibit 4**), including all documents describing all versions of all of Calbiotech's retirement plans between 2008 and 2019. The fraudulent SPD (**Exhibit 3**) described in paragraph 52 above was nowhere to be found within the complete administrative record.

52. In March 2019, Mr. Raya discovered that in February 2017 (less than three months after Mr. Raya's termination), Calbiotech, Inc. hired Leif Cadenhead to replace Mr. Raya and take over his former duties.

53. The relatively short amount of time taken to fill Mr. Raya's position is evidence that Calbiotech was not honest when describing their motivations for terminating Mr. Raya. The evidence shows that instead of eliminating Mr. Raya's position, as Defendants claim, Mr. Raya's position remained, and Calbiotech, Inc. began their search to replace Mr. Raya immediately after, or possibly before, Mr. Raya's termination was complete.

54. David Barka and Calbiotech, Inc. terminated Mr. Raya in an attempt retaliate against Mr. Raya for requesting Plan documents and in an attempt to interfere with his right to receive and view Plan documents.

55. Calbiotech made false statements and provided false documents to Mr. Raya immediately after his termination causing him to reasonably believe that his termination was not connected his request for documents.

### Refusal to Provide Administrative Record
### And Intentional Delays

56. After direct requests throughout 2018 and 2019, Defendants refused to provide a record of Mr. Raya's deposits and payments in to his 401(k) account.

57. Between the dates of July 9, 2018 and Jan 6, 2019, Mr. Raya made nine (9) separate requests that Calbiotech, Inc. provide a record of deposits and payments made to his 401(k) account during the time of his employment.

58. Four of Calbiotech, Inc.'s five responses falsely claim that only their third party service provider, Principal Financial, holds the data Mr. Raya requested and Calbiotech is simply waiting for Principal or working with Principal to answer Mr. Raya's request.

59. Mr. Raya then forwarded a written message from Principal Financial in which Principal denied working on this request and went further on to say the agreement Calbiotech made with Principal instructs Principal to refer any employee seeking administrative records back to Calbiotech. Principal's message went on to say Calbiotech has a fiduciary responsibility to provide the information to Mr. Raya.

60. In response to this, Calbiotech simply refused to acknowledge Principal's message and repeated the false claim they were waiting for information from Principal in order to respond to Mr. Raya's request.

### Refusal to Communicate

61. Plan Fiduciaries refuse to communicate directly with Plaintiff.

62. After Mr. Raya filed a claim for benefits in April 2018, communication with plan fiduciaries and requests for information have been met with formal requests that Mr. Raya no longer communicate with Plan fiduciaries. In 2018, (and many months before the filing of any civil complaints), Plan fiduciaries instructed Mr. Raya to route all future communication through their attorneys.

63. In response to a request for plan documents in 2018, Noori Barka, the CEO/owner of Calbiotech, Inc., and one of only two available fiduciaries, said he did not have the documents, and instructed Mr. Raya to remove him from his email list.

### CLAIMS

**First Claim: Recover Benefits Due Under the Plan [29 U.S.C. 1132(a)(1)(B)]**

**(Against Calbiotech, Inc. 401(k) Profit Sharing Plan, Calbiotech, Inc. Pension Plan, and Plan Administrators)**

64. Plaintiff re-alleges paragraphs 1-66.

65. 29 U.S.C. 1132(a)(1)(B) authorizes a participant or beneficiary to bring a civil action "(A) to recover benefits due to him under the terms of the plan or to clarify his rights to future benefits under the terms of the plan"

66. Mr. Raya was a participant in the Calbiotech 401(k) Profit Sharing Plan between 2009 and 2019.

67. Automatic or mandatory employer contributions described in 401(k) Plan documents were never made to Mr. Raya's account between 2008 and 2019 resulting in missed contributions and losses in an amount to be determined at trial.

68. The Calbiotech, Inc. Pension Plan failed to enroll Mr. Raya when he was eligible in Sep. 2008 and in each year after.

69. Plan documents clearly convey eligibility on all other regular full time employees (including Mr. Raya).

70. Defendants' actions caused a reduction or loss of benefits to Mr. Raya, and missed contributions to both plans and to Mr. Raya in an amount to be determined at trial.

### Second Claim - Breach of Fiduciary Duty
### 29 U.S.C. 1109(a),  29 U.S.C. 1132(a)(2); (Against All Fiduciaries)

71. Plaintiff re-alleges paragraphs 1-73.

72. 29 U.S.C. 1132(a)(2) authorizes a participant or beneficiary to bring a civil action for appropriate relief under section 29 U.S.C. 1109(a) which states "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary… and shall be

subject to such other equitable or remedial relief as the court may deem appropriate…"

73. David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc., and Erba Mannheim violated 29 U.S.C. 1104(a)(1) which mandates "fiduciaries discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; . . . ; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; …; (D) In accordance with the documents and instruments governing the plan…" when:

    a. David Barka, Calbiotech, Inc., and Erba Mannheim intentionally withheld plan documents for both retirement plans from participants resulting in missed contributions and losses for both plans.  Defendants were required to provide plan documents to participants automatically after enrollment in 2008 and 2009, as well as after significant plan changes and rewrites in 2011 and 2016, and after written requests in 2016, 2018, and 2019, and

    b. All fiduciaries misled participants regarding Calbiotech, Inc.'s mandatory contributions under the Calbiotech, Inc. 401(k) Profit Sharing Plan between 2008 and 2017 resulting in missed employer contributions and losses to the plan and Mr. Raya in an amount to be determined at trial, and

    c. All fiduciaries failed to disclose the existence of the Calbiotech, Inc. Pension Plan to eligible employees and participants between 2008 and 2018 resulting in a failure to enroll eligible employees and missed contributions to the Pension Plan in amount to be determined at trial, and

    d. David Barka and Calbiotech, Inc. failed to remit employee payroll deductions to 401(k) accounts administered by Principal Financial between 2009 and 2017 and

e. Fiduciaries introduced an invalid, backdated, and fraudulent document in 2019, describing an illegal amendment to the Pension Plan, and

f. Fiduciaries introduced an illegal Pension Plan amendment in 2008, which removed eligible non-HCE participants in a discriminatory and disqualifying action, resulting in losses of benefits and missed contributions for non-HCE participants in an amount to be determined at trial.

**Third Claim - Breach of Fiduciary Duty**

**29 U.S.C. 1132(a)(3); 29 U.S.C. 1109(a); (Against Fiduciaries)**

74. Plaintiff re-alleges paragraphs 1-76.

75. 29 U.S.C. 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan"

76. David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc., and Erba Mannheim violated 29 U.S.C. 1104(a)(1) which mandates "fiduciaries discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; . . . ; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, … (D) In accordance with the documents and instruments governing the plan…" when:

a. Fiduciaries failed to provide or intentionally withheld plan documents for both retirement plans from Mr. Raya between 2008 and 2018 resulting in a failure to enroll in the Pension Plan and missed contributions and losses for both plans in an amount to be determined at trial, and

13

19-cv-2295-WQH-AHG

b. Fiduciaries misled Mr. Raya regarding Calbiotech, Inc.'s mandatory contributions under the Calbiotech 401(k) Profit Sharing Plan, resulting in missed or reduced employer contributions and losses to Mr. Raya's account in an amount to be determined at trial, and

c. Fiduciaries failed to disclose or actively concealed the existence of the Calbiotech, Inc. Pension Plan from Mr. Raya resulting in a failure to enroll Mr. Raya and making it impossible for Mr. Raya to exercise his right to make a written request for plan documents specific to the Pension Plan, and

d. David Barka and Calbiotech, Inc. failed to remit Mr. Raya's payroll deductions to his 101(k) account administered by Principal Financial between 2009 and 2017, and

e. Fiduciaries introduced an invalid, backdated, and fraudulent document in 2019, describing an illegal amendment to the Pension Plan, and

f. Fiduciaries introduced an illegal Pension Plan amendment in 2008 which removed eligible non-HCE participants in a discriminatory and disqualifying action, resulting in losses of benefits and missed contributions for Mr. Raya in an amount to be determined at trial

g. The plan Administrator failed to enroll Mr. Raya in the Calbiotech, Inc. Pension Plan when he became eligible in 2008, resulting in lost benefits and missed contributions in an amount to be determined at trial.

**Fourth Claim – Interference**

**29 U.S.C. 1132(a)(3); (Against David Barka, Noori Barka, Calbiotech, Inc.)**

77. Plaintiff re-alleges paragraphs 1-79.

78. 29 U.S.C. 1140 states "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title… or for the purpose of

interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter...."

79. Mr. Raya was a regular full-time employee of Calbiotech for 8 ½ years beginning in 2008.

80. Mr. Raya was terminated on Dec. 1, 2016.

81. Defendants have provided different or inconsistent reasons for Mr. Raya's termination. Hiring records show evidence that Calbiotech, Inc.'s reason for termination, (Mr. Raya's position was eliminated), is pretextual and false.

82. Mr. Raya's termination was in retaliation to Mr. Raya exercising his rights under ERISA to request Plan Documents.

83. Mr. Raya's termination was an attempt to interfere and prevent Mr. Raya from exercising his protected right to request, receive, and view Plan Documents.

84. Calbiotech made false statements and provided false or fraudulent documents to Mr. Raya in the weeks immediately after his termination. The receipt of the fraudulent SPD (**Exhibit 3**) on Dec 14, 2016 (two weeks after his termination), caused Mr. Raya to reasonably believe that his termination was not an illegal attempt to prevent him from receiving or viewing plan documents.

85. Defendants' adverse actions against Mr. Raya violated 29 U.S.C. 1140 and resulted in significant damages and losses to Mr. Raya in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

86. Plaintiff Robert Raya seeks orders and judgments against Defendants as follows:
    a. Order the removal of Defendants as fiduciaries and trustees for both of Calbiotech, Inc.'s retirement plans
    b. Order the recovery of benefits due all parties under the rules of the plan and Defendants operate the Calbiotech, Inc. 401(k) Profit Sharing Plan according to the rules and provisions outlined in the Plan documents.

    c. Order Mr. Raya be made whole with respect to missed employer contributions, missed matched contributions and other losses suffered by Mr. Raya's Calbiotech, Inc. 401(k) Profit Sharing Account between 2008 and 2019

    d. Order the recovery of benefits due all parties under the rules of the plan and Defendants operate the Calbiotech, Inc. Pension Plan according to the rules and provisions outlined in the Plan documents

    e. ~~Order enrollment of Robert Raya in the Calbiotech, Inc. Pension Plan as of 2008.~~

    f. Order Mr. Raya be made whole with respect to lost Pension Plan benefits as if participation began Sep 1, 2008 and continues as of the present.

    g. Order the appointment of an independent actuary to accurately quantitate total losses suffered as a result actions and claims arising out of this complaint.

    h. Order Pension Plan provisions described in the Calbiotech, Inc. Pension Plan Adoption Agreement, (effective 2008), which do not match or disagree with the Pension Plan provisions described in the publicly posted Calbiotech, Inc. Pension Plan Form 5500 for years between 2008 and 2012, be replaced by the more generous or less restrictive provisions described in Form 5500 documents.

    i. Enter judgment against Defendants declaring Mr. Raya's termination violated 29 U.S.C. § 1140, and award appropriate equitable relief including:
        i. Reinstatement
        ii. Back pay
        iii. Lost interest and earnings
        iv. Front pay if no reinstatement

  v. Restitution and/or Surcharge in an amount that would make Mr. Raya whole with respect to lost wages, bonuses, and benefits resulting from wrongful termination.

j. Grant Mr. Raya such other and further relief with respect to ERISA claims, including all appropriate remedial or equitable relief allowable under 29 U.S.C. 1132 (a)(1)(B), (a)(2), and (a)(3), as the Court deems just and proper

k. Pursuant to 29 U.S.C. § 1132(g)(1), order Defendants to pay the reasonable value of Plaintiff's interim and final attorney's fees.

l. Order Defendants return Mr. Raya's converted property, plus lost interest and earnings.

m. Order General and compensatory damages for claims for fraud, conversion, and breach of fiduciary duty in an amount to be determined at trial.

n. For such other relief as the Court deems proper

9/07/2021

Date

Robert Raya
Plaintiff
In Pro Se