UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAYA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>DAVID BARKA, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 3:19-cv-2295-WQH-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**<br><br>**[ECF No. 104]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. ECF No. 104. Defendant seeks a protective order preventing disclosure of certain documents relating to a United States Department of Labor investigation, to which Plaintiff objects. *Id*. For the reasons set forth below, Defendant's motion for protective order is **DENIED**.

**I.     FACTUAL BACKGROUND[1]**

Plaintiff is a former employee of Defendant Calbiotech. ECF No. 64 at ¶ 6. Plaintiff worked as a fulltime scientist for Calbiotech beginning in May 2008 and ending in

---

[1] The following allegations are taken from Plaintiff's Second Amended Complaint. ECF No. 64.

December 2016. *Id*. at ¶ 16. Calbiotech is the administrator of the Pension Plan, which took effect on September 1, 2008. *Id*. at ¶¶ 7, 11. Defendants David Barka, Noori Barka, and Evelyn Barka are trustees and fiduciaries of the Pension Plan. *Id*. at ¶¶ 8–10. The Pension Plan states that it "confers eligibility on all regular employees" and "does not describe any exclusionary provisions that could apply" to Raya. *Id*. at ¶¶ 14–16. Between 2008 and "at least 2017," no information about the Pension Plan was provided to Plaintiff or any other regular employee. *Id*. at ¶¶ 16–17. Calbiotech and the fiduciaries "intentionally hid the existence of the Pension plan from eligible employees." *Id*. at ¶ 18. Plaintiff "and other eligible employees were not allowed to enroll" in the Pension Plan. *Id*. at ¶ 16. The only employees allowed to enroll in the Pension Plan were four immediate family members of Noori Barka, the founder and President/CEO of Calbiotech. *Id*. at ¶ 18.

Plaintiff discovered the existence of the Pension Plan in January 2018 and requested that Calbiotech review Plaintiff's eligibility for the Pension Plan. *Id*. at ¶ 20. Calbiotech determined that Plaintiff was ineligible based on an exclusionary provision that had been inserted into the Pension Plan after a 2011 rewrite. *Id*. at ¶ 21. The 2011 exclusionary provision could not have prevented Plaintiff's eligibility in 2008. *Id*. at ¶ 22.

In April 2018, Plaintiff submitted a claim for benefits and requested to be enrolled in the Pension Plan as of his date of eligibility in 2008. *Id*. at ¶ 23. In January 2019, "Defendants claimed to have just discovered a plan Amendment executed in Dec[ember] 2008, which limited Pension Plan eligibility to the CEO and four named immediate family members of the CEO, plus two other named employees, while excluding all other employees." *Id*. at ¶ 25. The Amendment was not part of the complete Pension Plan documents that Plaintiff received in 2018. *Id*. at ¶ 27. The amendment "displays signs of backdating" and "contains the name of an employee who was unknown to [Calbiotech] before she was hired for the first time in 2011." *Id*. at ¶ 28. In January 2019, "Calbiotech provided [Plaintiff] with a complete administrative record, including all documents describing all versions of all of Calbiotech's retirement plans between 2008 and 2019[,]" but the SPD provided to Plaintiff on December 14, 2016 describing "employer

contributions as discretionary" and omitting "existing mandatory or automatic employer contributions" was not included in the administrative record. *Id*. at ¶¶ 48, 51.

Calbiotech is also the administrator of the 401(k) Plan, which took effect on September 1, 2008. *Id*. at ¶ 30. David Barka "was the company officer who managed the day-to-day operations of the 401(k) Plan." *Id*. at ¶ 31. Plaintiff enrolled in the 401(k) Plan in 2010. *Id*. at ¶ 30. Plaintiff and other regular employees were never provided with documents describing the 401(k) Plan. *Id*. at ¶ 32. From 2009 through 2017, David Barka, the Vice President of Calbiotech, provided oral descriptions of the 401(k) Plan. Id. at ¶ 33. David Barka "described all employer contributions as being totally and completely discretionary." *Id*. "Plan documents finally acquired in 2018 describe employer contributions as mandatory or automatic." *Id*. at ¶ 34. "Calbiotech failed to make [its] mandatory contributions year after year." *Id*. at ¶ 35. The failure or refusal of Calbiotech to provide Plaintiff with 401(k) Plan documents "prevented [Plaintiff] from identifying hundreds of missed or reduced contributions to his 401(k) account[.]" *Id*.

In 2012, Plaintiff took out a loan from his 401(k) account and began to repay the loan through automatic deductions from his biweekly paychecks. *Id*. at ¶ 36. Between 2012 and 2016, $85.36 was deducted from each of Plaintiff's paychecks to repay the loan. *Id*. at ¶ 37. David Barka was responsible for remitting the entire $85.36 to Principal Financial, the third-party administrator and service provider of the 401(k) Plan and Plaintiff's 401(k) loan. *Id*. at ¶ 38. For over five years, David Barka remitted $14.86 of each biweekly deduction to Principal Financial and kept the remaining $70.50 for his personal use. *Id*. at ¶ 39–40.

Plaintiff received notice of his termination from Calbiotech on November 29, 2016. *Id*. at ¶ 42. "In the months and weeks just prior to termination," Plaintiff made multiple written requests for documents describing the 401(k) Plan. *Id*. at ¶ 43. On November 26, 2016, David Barka texted Plaintiff, "[i]t's time we part ways." *Id*. at ¶ 44. The next day, David Barka told Plaintiff that "things were not working out." *Id*. at ¶ 46. In December 2016, David Barka explained to Plaintiff that "his position was eliminated and [Plaintiff]

was, in effect, laid off." *Id*. at ¶ 46. "In January 2017, Calbiotech, Inc. did not contest or deny to the California Employment Development Department that [Plaintiff] was terminated because his position was eliminated[,] caus[ing Plaintiff] to further accept the pretextual excuse that his position was eliminated." *Id*. at ¶ 50. In February 2017, Calbiotech hired another employee "to replace [Plaintiff] and take over his former duties." *Id*. at ¶ 52. Calbiotech "was not honest when describing [its] motivations" for terminating Plaintiff. *Id*. at ¶ 53. "Calbiotech [] terminated [Plaintiff] to retaliate against him for requesting [401(k)] Plan documents and to interfere with his right to receive Plan documents." *Id*. at ¶ 54.

Between July 9, 2018 and January 6, 2019, Plaintiff made nine separate requests to Calbiotech to "provide a record of deposits and payments made to his 401(k) account during the time of his employment." *Id*. at ¶ 57. The service provider, Principal Financial, told Plaintiff that Calbiotech "instructs Principal to refer any employee seeking administrative records back to Calbiotech," but Calbiotech refused to acknowledge this, "repeat[ing] the false claim they were waiting for information from Principal in order to respond to [Plaintiff]'s request." *Id*. at ¶¶ 59–60.

Plaintiff alleges embezzlement, conversion of payroll deductions, interference, retaliation, wrongful termination, and refusal to provide administrative record, as means to allege claims against the 401(k) Plan, the Pension Plan, and Plan Administrators under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due under the Pension Plan and the 401(k) Plan; to allege claims against all fiduciaries for breach of fiduciary duties under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3) with respect to both the Pension Plan and 401(k) Plan; and to allege claims against David Barka, Noori Barka, and Calbiotech for ERISA interference under 29 U.S.C. §§ 1140 and 1132(a)(3). *Id*. at ¶¶ 64–85.

## II.     PROCEDURAL BACKGROUND

On January 11, 2022, pursuant to the Court's Chambers Rules, the parties notified the Court that they disagreed about numerous discovery requests, including whether Defendant should be required to produce documents relating to the Department of Labor's

investigation of Defendant's 401(k) Plan. Email to Chambers (Jan. 11, 2022 at 7:46 AM); Email to Chambers (Jan. 12, 2022 at 12:49 AM); *see* Chmb.R. at 2. The Court held a discovery conference on January 13, 2022. ECF No. 94. The Court required the parties to submit a supplemental chart regarding their discovery disputes (*see* ECF No. 95), and held a second discovery conference on January 31, 2022. ECF No. 99. During the January 31 discovery conference, the Court gave the parties its guidance, and the parties reached agreements. *Id*. Though the Court informed the parties it was inclined to require Defendant to respond to Plaintiff's Request for Production No. 10, which requests documents from the Department of Labor ("DOL") investigation, the Court explained that "[i]f Defendant instead wishes to proceed via formal motion practice regarding the DOL issue, counsel shall inform the Court via email[.]" *Id*. On February 1, 2022, Defendant informed the Court that it does "wish to object to the document production request concerning the DOL issue and proceed via formal motion practice on that issue." Email to Chambers (Feb. 1, 2022 at 1:04 PM). As such, the Court issued a briefing schedule. ECF No. 101. The parties timely filed their Joint Motion for Determination of Discovery Dispute on February 18, 2022. ECF No. 104. The Court held a hearing on the motion on March 4, 2022, and heard oral argument from both sides. ECF No. 107. This order follows.

**III.  DISCOVERY REQUEST AT ISSUE**

Defendant seeks a protective order regarding Plaintiff's first set of Requests for Production of Documents ("RFPs"), specifically, number 10. ECF No. 104. In RFP No. 10, Plaintiff requests:

> Please produce all Documents between CALBIOTECH or the ADMINISTRATOR and the Department of Labor (or the Employee Benefits Security Administration) which in any way concern or relate to the 401(k) PLAN.

Email to Chambers (Jan. 27, 2022 at 1:57 PM); *see* ECF No. 95 (requiring parties to provide text of discovery requests at issue as served via an emailed chart). Defendant

objects to the discovery request on the grounds[2] that it is overbroad, unduly burdensome, vague, seeks confidential or privileged information, and is not relevant to any party's claims or defenses. ECF No. 104 at 2.

## IV. PARTIES' POSITIONS

Defendant contends that the DOL documents requested by Plaintiff are not relevant[3] because "Plaintiff was employed by Calbiotech, and therefore making or receiving contributions to the 401(k) Plan, for approximately only one year and eleven months out of the approximately four years and three months which were under review by the DOL

---

[2] Defendant also objected on the ground that the request "seeks disclosure of information that is protected by the right of privacy guaranteed by applicable state and federal law, including the Constitution of the State of California and the United States Constitution." Email to Chambers (Jan. 27, 2022 at 1:57 PM); *see* ECF No. 95 (requiring parties to provide text of discovery responses at issue as served via an emailed chart). However, this objection was not reasserted in the instant motion, and is therefore deemed waived. *See, e.g.*, *SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."); *Sherwin-Williams Co. v. Earl Scheib of Cal.*, Inc., No. 12cv2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs). However, as discussed below, the Court notes that privacy concerns regarding financial information may be addressed via redactions and a protective order.

[3] Defendant also objects on the ground that "the production of such documents would not lead to the discovery of admissible evidence." ECF No. 104 at 3. The Court notes that, when analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *McMorrow v. Mondelez Int'l.*, No. 17cv2327-BAS-JLB, 2019 WL 3852498, at *2 (S.D. Cal. Apr. 19, 2019) (citing advisory committee notes to 2015 amendments and explaining that "[t]he 2015 amendment to Rule 26(b) deleted the phrase 'reasonably calculated to lead to the discovery of admissible evidence' because it was often misconstrued to define the scope of discovery and had the potential to 'swallow any other limitation.' [] The amendment replaced this phrase with the statement that information 'need not be admissible in evidence to be discoverable.'").

during its investigation of the 401(k) Plan." ECF No. 104 at 3. Defendant argues that "the ultimate result of the DOL's investigation and its findings have no bearing on Plaintiff's claims" and that "the outcome of the DOL investigation, regardless of the determination made, does not show that Plaintiff's contributions were embezzled by Calbiotech or any Defendants and/or not made at all. … [T]he contribution history reports in possession of the parties and the Court conclusively indicate the remittance of all contributions made by Plaintiff to his 401(k) Plan account, which ceased no later than 2016 as Plaintiff would no longer have been permitted to (and in fact did not) make any contributions to his 401(k) Plan account after such time." *Id*. at 4. Defendant contends that "the DOL's investigation findings and closing resulted in no further benefits being owed to Plaintiff under the 401(k) Plan and no further action being taken by the DOL, thus further evidencing the lack of necessity for the documents requested." *Id*. at 6. Further, Defendant notes that the Department of Labor denied Plaintiff's request three years earlier for the documents, indicating that it would be inappropriate for the department to "'disclose any information to the complaining participant,'" contending that this "further indicates the sensitive, confidential, and privileged nature of such documents." *Id*. at 4 (quoting ECF No. 104-3 at 3).

      Defendant also contends that responding to RFP No. 10 would be unduly burdensome, stating that "the unduly burdensome nature of Plaintiff's request is clear." ECF No. 104 at 4–5. Defendant argues that "[t]he documents requested by Plaintiff consist of several hundred if not thousands of pages, nearly all of which will require substantial redaction due to their sensitive, personal, and confidential financial nature." *Id*. Defendant contends that "[t]he process of redacting information from such a voluminous number of pages is both costly and timely [sic] for Calbiotech, for what will ultimately prove to be of no evidentiary value to Plaintiff for purposes of advancing his asserted claims." *Id*. at 5.

      Defendant also argues that "Plaintiff's request for production lacks specificity and identifies a scope that is unjustifiably broad." *Id*. at 5. Defendant explains that "[a]lthough Plaintiff has narrowed his request through meet and confer efforts and discovery

conferences with the Court and counsel to Calbiotech to only those documents concerning the DOL's investigation of the 401(k) Plan, Plaintiff's request neglects to include a time period, or any reference to Plaintiff by name, both of which are means of at minimum appropriately narrowing the scope of the request at issue." *Id*. Defendant likens Plaintiff's discovery request to a "fishing expedition, the relevancy of which is entirely lacking, and based on the over-reaching breadth of the request." *Id*. at 6. In the alternative, Defendant requests "that it not be obligated to produce any such documents requested by the DOL for the period of time following December 31, 2016, as such documents would have absolutely no bearing on Plaintiff or his asserted claims given his employment termination date of November 29, 2016." *Id*.

As to relevance, Plaintiff contends that "[t]he DOL investigation of the Calbiotech Inc., 401(k) Profit Sharing Plan was opened in response to Plaintiff's complaint in April of 2018. Plaintiff's complaint to the DOL sought help with Defendants' missed contributions, embezzled payments, failures to provide Plan Documents, and other actions which breached fiduciaries' responsibilities. The DOL opened their investigation based on the very allegations made in this action. Relevance is undeniable." ECF No. 104 at 6. As to burden, Plaintiff contends that "the relevance and necessity of the information sought far outweighs any burden created by the production of the requested documents." *Id*. at 7. As for any confidentiality concerns, Plaintiff "is willing to stipulate to the attached [model] protective order." *Id*. at 7.

**V.     LEGAL STANDARD**

The Federal Rules of Civil Procedure permit parties to obtain nonprivileged information if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b).

Courts have broad discretion to determine relevance for discovery purposes. *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *3 (S.D. Cal. June 22,

2017). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). The question of relevance "should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Doherty*, 2017 WL 1885677, at *2.

Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. FED. R. CIV. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id*

Rule 26(c)(1), in turn, governs protective orders. For good cause, a court may "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[,]" including prohibiting or limiting a deposition. FED. R. CIV. P. 26(c)(1)(A). In order to make the requisite showing of good cause, "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06cv408-WQH-AJB, 2007 WL

1120567, at *4 (S.D. Cal. Mar. 22, 2007) ("To establish good cause, the moving party must make a clear showing of a particular and specific need for the order."). "The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection." *Grano v. Sodexo Mgmt.*, 335 F.R.D. 411, 414 (S.D. Cal. 2020); *see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (interpreting Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

## VI. DISCUSSION

The Court finds that the documents requested are relevant and proportional. There is clear overlap between the DOL investigation and Plaintiff's claims, particularly since those claims are what prompted the investigation. *See* ECF No. 104 at 2 ("Plaintiff submitted to the DOL at least one written and/or oral complaint regarding the 401(k) Plan. [] As a result of such complaint, the DOL initiated a[n] [] investigation into the 401(k) Plan in March of 2019."); ECF No. 104-2 at 2 (Letter informing Defendant that DOL "will be reviewing the Calbiotech, Inc. 401(k) Profit Sharing Plan [] to ensure that its operation complies with Title I of the E[RISA]."). Therefore, Defendant's assertion that "the ultimate result of the DOL's investigation and its findings have no bearing on Plaintiff's claims" is unpersuasive. ECF No. 104 at 3.

Courts often look to the elements of the causes of action for a relevance framework. *See, e.g.*, *FlowRider Surf, Ltd. V. Pac. Surf Designs, Inc.*, No. 15cv1879-BEN-BLM, 2016 WL 6522807, at *3–*6 (S.D. Cal. Nov. 3, 2016) (describing elements of inequitable conduct, laches, and equitable estoppel when determining relevance of various discovery requests); *Ewing v. Flora*, No. 14cv2295-AJB-NLS, 2015 U.S. Dist. LEXIS 181572, at *5 (S.D. Cal. Dec. 28, 2015) (describing elements of the California Invasion of Privacy Act, RICO, and TCPA when determining relevance of various discovery requests).

ERISA provides a right of action for plan participants or beneficiaries "to recover benefits due . . . under the terms of [a] plan, to enforce [] rights under the terms of the plan, or to clarify [] rights to future benefits under the terms of the plan." 29 U.S.C. §

1132(a)(1)(B). To plead a violation of § 1132(a)(1)(B), a plaintiff must "identify the provisions of the plan that entitle [him] to benefits." *Doe v. CVS Pharm., Inc.*, 982 F. 3d 1204, 1213 (9th Cir. 2020) (brackets in original) (citation omitted). Here, the district court found, in identical portions of an earlier amended complaint, since Plaintiff "alleges that the *401(k) Plan* document 'describes employer contributions as mandatory or automatic,' … that [Plaintiff] sufficiently identified the provision of the *401(k) Plan* that confers the benefits alleged," i.e., stating a claim under §1132(a)(1)(B). ECF No. 45 at 12–13 (emphasis added).

Section 1132(a)(2) permits "a participant, beneficiary, or fiduciary" to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a). 29 U.S.C. § 1132(a)(2). Section 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Section 1132(a)(2) "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Comm'n, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008)). Under § 1132(a)(2), the plaintiff "must allege that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." *Id*. (citations omitted).

Section 1132(a)(3) provides that a plan participant may bring a civil action "to enjoin any act or practice which violates any provision of this title or the terms of the plan, or [] to obtain other appropriate equitable relief [] to redress such violations or [] to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). "Unlike [a claim for harm to the plan under] 29 U.S.C. § 1132(a)(2) . . . a participant or beneficiary has

standing pursuant to section 1132(a)(3) to seek individual recovery . . . .'" *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009). Section 1132(a)(3) is a "catchall provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (alterations in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).

Section § 1140 prevents employers from discharging a participant "because of a specific intent to interfere with ERISA rights . . . ." *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990) (citations omitted); *see* 29 U.S.C. § 1140.

Here, Plaintiff alleged violations with respect to the 401(k) Plan investigated by DOL, under sections 1132(a)(1)(B), 1109(a), 1132(a)(2), 1132(a)(3), and 1140. *See* ECF No. 64 at ¶¶ 66–67 (29 U.S.C. § 1132(a)(1)(B) claim, alleging that "Mr. Raya was a participant in the Calbiotech 401(k) Profit Sharing Plan between 2009 and 2019. []Automatic or mandatory employer contributions described in 401(k) Plan documents were never made to Mr. Raya's account between 2008 and 2019 resulting in missed contributions and losses in an amount to be determined at trial."); *id*. at ¶¶ 73, 76 (29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3) claims, alleging "David Barka, Calbiotech, Inc., and Erba Mannheim intentionally withheld plan documents *for both retirement plans* from participants resulting in missed contributions and losses for both plans. Defendants were required to provide plan documents to participants automatically after enrollment in 2008 and 2009, as well as after significant plan changes and rewrites in 2011 and 2016, and after written requests in 2016, 2018, and 2019[.] [] All fiduciaries misled participants regarding Calbiotech, Inc.'s mandatory contributions under the Calbiotech, Inc. 401(k) Profit Sharing Plan between 2008 and 2017 resulting in missed employer contributions and losses to the plan and Mr. Raya in an amount to be determined at trial") (emphasis added); *id*. at ¶¶ 43, 54, 82 (29 U.S.C. § 1140 claim, alleging that, "[i]n the months and weeks just prior to termination, beginning in July of 2016, Mr. Raya made multiple written requests for Plan Documents describing the Calbiotech, Inc. 401(k) Profit Sharing Plan" and "Mr. Raya's

termination was an attempt to interfere and prevent Mr. Raya from exercising his protected right to request, receive, and view Plan Documents"). The Court finds that the DOL's investigation of Defendant's 401(k) Plan is relevant to Plaintiff's claims and is proportional to the needs of the case.

Further, even though Plaintiff was not employed during the entire investigation period, he was employed for a substantial part of it, rendering the documents relevant. As Defendant conceded at the motion hearing, the DOL defined the temporal scope of the investigation based on allegations that Plaintiff brought to the DOL's attention. ECF No. 107 at 1:51, 2:39.

Additionally, the Court is not persuaded by Defendant's argument that production should be limited to documents referring directly to Plaintiff. At the motion hearing, Defendant claimed that documents specifically referencing Plaintiff "would be what advance Mr. Raya's claims, if at all. A document which references something on a plan-wide basis wouldn't necessarily advance Mr. Raya's individualized claims in this case." ECF No. 107 at 8:07. However, Plaintiff's case does not solely involve individualized claims. At the hearing, Plaintiff reiterated this his second and third claims are on behalf of the 401(k) Plan as a whole. *Id*. at 14:36. For example, under § 1132(a)(2), a plaintiff must allege "that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets" and "not [] injuries suffered by [the] individual participant[.]" *Wise*, 600 F.3d at 1189 (dismissing § 1132(a)(2) claim because the plaintiff "did not allege that the plan as a whole incurred an injury as a result of the Plan Administrators' mishandling of her claim. While [plaintiff]'s complaint alleges that the § 1132(a)(2) claim is brought on behalf of, and for the benefit of, the plan and all its participants, there are no factual allegations that the Plan Administrators violated their duties with respect to anything other than [plaintiff]'s individual claim.").

Defendants' characterization of the email exchange between DOL and Plaintiff, and Defendants' interpretation of DOL's refusal to provide documents to Plaintiff, is also unpersuasive. *See* ECF No. 104 at 4 ("The DOL's repeated refusal to provide Plaintiff with

such information and documents *further indicates the sensitive, confidential, and privileged nature of such documents*, and evidences Plaintiff's lack of entitlement to any documents relating to the DOL's investigation of the 401(k) Plan.") (emphasis added). Investigator Ng explained to Plaintiff that "I must complete my investigation fully before I can make a report of my findings. … I wish I could give you more details, but we must review everything before giving you an opinion." ECF No. 104-4 at 2. Investigator Ng also explained "we cannot disclose any information to the complaining participant as there is always a concern for potential leaks, retaliations, etc. We will not be representing you like an attorney would, where the attorney would be able to discuss all the facts and details with you, but we can give you an explanation of the findings when the case is closed." ECF No. 104-3 at 3. The fact that DOL does not share documents with complainants as a routine matter does not have any bearing on whether Plaintiff is entitled to the documents as part of this case, nor does it suggest that the documents are sensitive, confidential, or privileged.

The Court is also not persuaded by Defendants' undue burden argument. The party "claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Laryngeal Mask Co. v. Ambu A/S*, No. 07cv1988-DMS-NLS, 2009 WL 10672487, at *2 (S.D. Cal. Jan. 27, 2009) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D. Nev. 1997). Here, Defendant does not provide any evidence in support of its assertion. Further, though Defendant includes allegations regarding burden in its portion of the motion, the information is not specific enough to persuade the Court. For example, Defendant does not sufficiently explain how many pages of documents there are, how long redactions would take, or how costly it would be.

Instead, Defendant vaguely states that "[t]he documents requested by Plaintiff consist of several hundred if not thousands of pages[.]" ECF No. 104 at 4; *see also id*. at 5 (stating, without explanation, that redacting information "is both costly and timely [sic] for

Calbiotech"). Such conclusory assertions will not do.[4] *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) ("Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient."). When the Court repeatedly asked during the motion hearing for the number of pages or format of documents at issue, Defendant did not provide any clarifying specifics. ECF No. 107 at 3:18, 6:05. For example, Defendant explained that, during the first exchange with the DOL, "hundreds of pages" were sent, noting that there was substantial back and forth between Defendant and the DOL, including subsequent productions of unknown lengths.[5] *Id*. at 3:42, 4:02. When the Court pressed Defendant regarding the specific burden, Defendant did not quantify the cost or time, and instead responded that the discovery request was burdensome because "of the number of documents and the redactions that would be needed due to the sensitive and confidential nature of the information at issue." *Id*. at 4:35, 13:52. The Court is not persuaded by Defendant's vague and speculative arguments, and notes that "[j]ust because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." *Jackson*, 173

---

[4] Further, Defendant's repeated assertions that the documents "will ultimately prove to be of no evidentiary value to Plaintiff for purposes of advancing his asserted claims" and that "Plaintiff does not need any of these documents to advance any of his claims asserted in his Second Amended Complaint" are not well taken. ECF No. 104 at 5. The Court is aware that Plaintiff is proceeding *pro se*; however, whether the produced documents are ultimately useful or used by a party in litigation is not a matter for opposing counsel to decide. *See, e.g.*, FED. R. CIV. P. 26(b)(1) (information "need not be admissible in evidence to be discoverable.").

[5] Defendant conceded that it did not even provide Plaintiff with the less-burdensome-to-produce conclusionary letter from the DOL. ECF No. 107 at 6:39. At the motion hearing, Defendant stated that, "if you were to order us to provide him that conclusionary letter, I have no problem doing that." *Id*. at 8:48. Defendant should not have waited to be compelled to do so by the Court, since "[t]he discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg. Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018).

1  F.R.D. at 528–29.

2  As to Defendant's argument regarding the request being overbroad, the Court finds that meet and confer efforts have sufficiently narrowed the scope. Plaintiff now seeks "only those documents concerning the DOL's investigation of the 401(k) Plan." ECF No. 104 at 5. Further, "while a document request seeking information 'relating to' a certain subject may be overbroad [], it is not necessarily so." *A. Farber & Ptnrs.*, 234 F.R.D. 186, 188 n.1 (C.D. Cal. 2006) (emphasis added) (overruling objection as "without merit" when defendant argued that document requests "seek[ing] information 'relating to' a subject" were overly burdensome). As to Defendant's concern regarding the words "all" and "in any way" being "all-encompassing," *see* ECF No. 104 at 5, the Court notes that discovery requests "should be interpreted reasonably, in good faith, and according to the meaning the plain language of the interrogatory would naturally import. [] Here, a pro se litigant propounded the interrogatories and document requests to Defendants. Many of Defendant's objections (and the resulting motion practice) could have been avoided if Defendants simply heeded [this] guidance." *Archer v. City of Winter Haven*, No. 8:16cv3067-T-36AAS, 2017 WL 5158142, at *2 (M.D. Fla. Nov. 7, 2017). The Court finds that the terms of production set forth below will adequately address Defendant's concerns that the overbreadth would implicate the privacy of others.

//
//
//
//
//
//
//
//
//
//

## VII. CONCLUSION

The Court therefore **DENIES** Defendant's motion for protective order. ECF No. 104. Defendant shall produce documents responsive to RFP No. 10 by **April 7, 2022**. Defendant is permitted to redact financial information of other participants. However, after reviewing the documents, Plaintiff may seek the redacted information upon a showing of relevance. All documents produced in response to RFP No. 10 shall be treated as confidential by Plaintiff. Plaintiff is not permitted to share the documents with any persons who are not witnesses in this litigation, or use the documents for any purposes outside of this litigation.

**IT IS SO ORDERED.**

Dated:  March 8, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge