UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAYA,<br><br>                                          Plaintiff,<br><br>v.<br><br>DAVID BARKA; NOORI BARKA;<br>EVELYN BARKA; CALBIOTECH,<br>INC.; CALBIOTECH, INC. 401(k)<br>PROFIT SHARING PLAN;<br>CALBIOTECH, INC. PENSION PLAN,<br><br>                                          Defendants. | Case No.: 19-cv-2295-WQH-AHG<br><br>**ORDER** |
| DAVID BARKA; NOORI BARKA;<br>EVELYN BARKA; CALBIOTECH,<br>INC.; CALBIOTECH, INC. 401(k)<br>PROFIT SHARING PLAN;<br>CALBIOTECH, INC. PENSION PLAN,<br><br>                                 Counter Claimants,<br><br>v.<br><br>ROBERT RAYA,<br><br>                                 Counter Defendant. | |

HAYES, Judge:

The matters before the Court are: (1) the Motions for Partial Summary Judgment filed by Plaintiff (ECF Nos. 60, 79, 92, 102); (2) the Motion to Dismiss Plaintiff's Second Amended Complaint or Alternatively for a More Definite Statement filed by Defendants (ECF No. 77); (3) the Motion for Partial Summary Judgment or Alternatively Summary Adjudication filed by Defendants (ECF No. 83); (4) the Cross-Motion for Legal Findings and Conclusions filed by Defendants (ECF No. 97); and (5) the Cross-Motion for Partial Summary Judgment filed by Defendants (ECF No. 106).

## I.   BACKGROUND

On December 2, 2019, Plaintiff Robert Raya, proceeding pro se, filed a Complaint against Defendants, including David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc. ("Calbiotech"), Calbiotech Pension Plan (the "Pension Plan"), and Calbiotech 401(k) Profit Sharing Plan (the "401(k) Plan"). (ECF No. 1). On December 9, 2020, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 39). The FAC alleged that Defendants engaged in illegal conduct relating to the administration of the Pension Plan and 401(k) Plan and unlawfully terminated Plaintiff in retaliation for his requests for plan documents. The FAC brought four claims on behalf of Plaintiff and the retirement plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as claims under California state law.

On December 22, 2020, Defendants filed a Motion to Dismiss the FAC. (ECF No. 40). On June 3, 2021, the Court issued an Order dismissing the fourth claim for ERISA interference, dismissing the state law claims, striking the request for a jury trial, and otherwise denying the Motion to Dismiss. (ECF No. 45).

On June 17, 2021, Defendants filed an Answer to the FAC and a Counterclaim for breach of contract. (ECF No. 46). The Counterclaim alleges that Plaintiff/Counter Defendant entered into a separation agreement with Calbiotech (the "Separation Agreement") and released all claims arising prior to execution of the Separation Agreement on December 7, 2016. The Counterclaim alleges that Plaintiff/Counter Defendant breached

the terms of the Separation Agreement by filing complaints with the United States Department of Labor, this lawsuit against Defendants/Counter Claimants (hereinafter, "Defendants"), and a related lawsuit against Calbiotech. On July 8, 2021, Plaintiff/Counter Defendant (hereinafter, "Plaintiff") filed an Answer to the Counterclaim. (ECF No. 50).

On August 23, 2021, Plaintiff filed a Motion for Partial Summary Judgment or Declaratory Judgment "as to the validity and enforceability" of an amendment to the Pension Plan (the "2008 Amendment"). (ECF No. 60 at 1).

On September 8, 2021, Plaintiff filed the operative Second Amended Complaint ("SAC"), alleging the same four ERISA claims asserted in the FAC. (ECF No. 64). The first claim alleges that Calbiotech, the Pension Plan, the 401(k) Plan, and the plan administrators violated 29 U.S.C. § 1132(a)(1)(B) by not enrolling Plaintiff in the Pension Plan and by failing to make "[a]utomatic or mandatory employer contributions described in 401(k) Plan documents." (*Id.* ¶ 67). The second claim alleges that the fiduciaries of the retirement plans violated 29 U.S.C. §§ 1109(a) and 1132(a)(2) by failing to lawfully discharge their duties as fiduciaries when they (1) "intentionally withheld plan documents for both retirement plans from participants resulting in missed contributions and losses for both plans"; (2) "failed to disclose the existence of the [ ] Pension Plan . . . resulting in a failure to enroll eligible employees and missed contributions to the Pension Plan"; (3) "introduced an invalid, backdated, and fraudulent document," which described the "illegal" and "discriminatory" 2008 Amendment to the Pension Plan; (4) "misled participants regarding Calbiotech['s] [ ] mandatory contributions under the [401(k) Plan] . . . resulting in missed employer contributions and losses to the plan"; and (5) "failed to remit employee payroll deductions to 401(k) accounts." (*Id.* ¶ 73). The third claim alleges that the same course of conduct harmed Plaintiff in violation of 29 U.S.C. §§ 1109(a) and 1132(a)(3). The fourth claim alleges that David Barka, Noori Barka, and Calbiotech violated 29 U.S.C. §§ 1140 and 1132(a)(3) by terminating Plaintiff "in retaliation [for] [Plaintiff] exercising his rights under ERISA to request [p]lan [d]ocuments." (*Id.* ¶ 82). The SAC requests the recovery of benefits under the retirement plans, "the removal of Defendants as fiduciaries

and trustees" of the retirement plans, the "appointment of an independent actuary to accurately quantitate total losses suffered," and other relief. (*Id.* ¶ 86).[1]

On September 15, 2021, Defendants filed an Opposition to Plaintiff's Motion for Partial Summary Judgment. (ECF No. 74). On September 20, 2021, Plaintiff filed a Reply. (ECF No. 75).

On September 24, 2021, Defendants filed a Motion to Dismiss the SAC. (ECF No. 77). On October 12, 2021, Plaintiff filed an Opposition to the Motion to Dismiss. (ECF No. 78).

On October 20, 2021, Plaintiff filed a Motion for Partial Summary Judgment or Declaratory Judgment Regarding Waiver. (ECF No. 79).

On October 22, 2021, Defendants filed a Reply in support of their Motion to Dismiss. (ECF No. 81).

On November 3, 2021, Defendants filed a Motion for Partial Summary Judgment or Alternatively Summary Adjudication on Plaintiff's first three claims. (ECF No. 83).

On November 5, 2021, Defendants filed an Opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Waiver. (ECF No. 84). On November 9, 2021, Plaintiff filed a Reply. (ECF No. 85).

On November 12, 2021, Plaintiff filed an Opposition to Defendants' Motion for Partial Summary Judgment. (ECF No. 87).

On November 17, 2021, Defendants filed a Sur-Reply in opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Waiver. (ECF No. 89).[1]

On November 24, 2021, Defendants filed a Reply in support of their Motion for Partial Summary Judgment. (ECF No. 90).

On January 11, 2022, Plaintiff filed a Motion for Partial Summary Judgment to Void Amendment, raising additional arguments regarding the validity and enforceability of the

---

[1] Defendants' request that the Court consider the Sur-Reply (ECF No. 89) is granted.

2008 Amendment to the Pension Plan. (ECF No. 92). On January 28, 2022, Defendants filed an Opposition to Plaintiff's Motion for Partial Summary Judgment to Void Amendment and "Cross-Motion for Legal Findings and Conclusions." (ECF No. 97 at 5).

On February 7, 2022, Plaintiff filed a Motion for Summary Judgment or Partial Summary Judgment to Void Waiver. (ECF No. 102).

On February 17, 2022, the Court heard oral argument on all motions pending before the Court as of January 31, 2022. (ECF No. 103).

On February 25, 2022, Defendants filed an Opposition to Plaintiff's Motion for Summary Judgment or Partial Summary Judgment to Void Waiver and Cross-Motion for Partial Summary Judgment. (ECF No. 106). On March 7, 2022, Plaintiff filed a Reply. (ECF No. 113).

## II.   MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 60, 79, 83, 92, 97, 102, 106)

### A. <u>Facts</u>

Calbiotech is the Plan Administrator of the Pension Plan. Calbiotech established and adopted the Pension Plan on December 28, 2008, with a retroactive effective date of September 1, 2008. The Standardized Non-Integrated Adoption Agreement (the "Adoption Agreement") provides that "[a]ll Employees" who meet certain minimum requirements are eligible to participate in the Pension Plan, subject to several exceptions not applicable to the facts of this case. (ECF No. 74-4 at 3).

The Prototype Defined Benefit Retirement Plan Basic Plan #02 (the "Basic Plan") provides that the "Employer may amend the [Pension] [P]lan . . . at any time," subject to several restrictions not applicable to the facts of this case. (ECF No. 74-5 at 6). Calbiotech adopted the 2008 Amendment to the Pension Plan on December 28, 2008, effective retroactively as of September 1, 2008. The 2008 Amendment provides that "[a]ll of the Employees other than Noori Barka, Evelyn Barka, David Barka, Danny Barka, Ann Barka,

Amar Dawood, and Sabreen Najeeb are not participants under the Pension Plan." (ECF No. 74-6 at 2).[2]

Calbiotech is also the Plan Administrator of the 401(k) Plan, which it established and adopted effective September 1, 2008. The 401(k) Plan has been amended and restated several times, most recently on April 3, 2017. The 401(k) Plan includes an anti-alienation provision that prohibits participants and beneficiaries in the 401(k) Plan from "assign[ing], alienat[ing], transfer[ing] or sell[ing] any right or claim to a benefit or distribution from the Plan." (ECF No. 74-9 at 215). The 401(k) Plan further provides procedures for administrative claims and states that "[i]f the Plan Administrator makes a final written determination denying a Participant's or Beneficiary's benefit claim, . . . [a]ny legal or equitable action must be commenced no later than the earlier of: (1) 180 days following the date of the final determination or (2) Three years following the proof of loss." (ECF No. 74-9 at 192).

Plaintiff was employed by Calbiotech as a scientist beginning in May or June 2008 and ending when Calbiotech terminated Plaintiff's employment in late 2016. Prior to his employment, Plaintiff attended college but did not attain a degree. During Plaintiff's employment at Calbiotech, he was promoted into a managerial role.

On December 7, 2016, Plaintiff entered into a Separation Agreement with Calbiotech. The Separation Agreement included a Release, which states that Plaintiff agrees to "completely release and forever discharge" Calbiotech "from and against all claims" that Plaintiff "has now, has ever had, or may have in the future" against Calbiotech "based on any acts or omissions by [Calbiotech] . . . as of the date of the execution of this Agreement by [Plaintiff]." (ECF No. 40-7 at 3). The Separation Agreement states that

---

[2] David Barka, the Vice President of Calbiotech and a Trustee of the Pension Plan, states in a sworn Declaration that the 2008 Amendment relied on in this Order is "[a] true and correct copy" of the 2008 Amendment to the Pension Plan and "was adopted/executed by Calbiotech concurrently with the Adoption Agreement on December 28, 2008." (ECF No. 74-2 ¶ 9). Plaintiff has not come forward with any evidence that the 2008 Amendment is not authentic or that the dates listed in the 2008 Amendment are false.

Plaintiff agrees to "not participate, assist, or cooperate in any suit, action, or proceeding against or regarding the Released Parties, or any of them, unless compelled to do so by law." (*Id.*). The Separation Agreement further states that Plaintiff agrees to "waive[] any and all rights or benefits that he may have under the terms of California Civil Code § 1542" and contains the text of that statute. (*Id.*). Calbiotech agreed to pay Plaintiff $12,500 "as full and complete settlement of any and all disputed claims or potential disputed claims that [Plaintiff] may have against [Calbiotech]." (*Id.* at 2).

Plaintiff did not participate in the preparation of the Separation Agreement. The Separation Agreement provided that Plaintiff was entitled to twenty-one days in which to review the Separation Agreement and had the right to revoke the Separation Agreement within seven days of signing it. Plaintiff executed the Separation Agreement the day after he received the Separation Agreement without consulting an attorney.

On July 6, 2018, Plaintiff filed an administrative claim for benefits under the Pension Plan and the 401(k) Plan. On January 1, 2019, Calbiotech denied the claim. On March 2, 2019, Plaintiff filed an administrative appeal. (*Id.* at 551). On April 30, 2019, Calbiotech denied the appeal. The denial letter notified Plaintiff that he "ha[d] the right to file a claim under [29 U.S.C. § 1132(a)] in a court of competent jurisdiction . . . no later than the earlier of (1) 180 days following the date of this final determination, or (2) three years following the proof of loss." (ECF No. 74-9 at 627-28). Plaintiff filed a Complaint in this Court on December 2, 2019.

## B. **Contentions**

Plaintiff contends that the 2008 Amendment to the Pension Plan is invalid and unenforceable and cannot be used to deny Plaintiff's eligibility to participate in the Pension Plan. Plaintiff contends that he has standing to seek Pension Plan benefits. Plaintiff contends that the statute of limitations on Plaintiff's claims for benefits should be tolled because Defendants prevented Plaintiff from filing a timely claim. Plaintiff contends that his claims for additional equitable relief are distinct from his claims for benefits. Plaintiff

further contends that the Release included in the Separation Agreement between Plaintiff and Calbiotech is invalid, void, and unenforceable against Plaintiff's claims.

Defendants contend that the 2008 Amendment to the Pension Plan is valid and enforceable, and Plaintiff was not eligible to participate in the Pension Plan at any time. Defendants contend that Plaintiff lacks standing to seek Pension Plan benefits. Defendants contend that Plaintiff's claims for benefits are barred by the statute of limitations. Defendants contend that Plaintiff's claims for additional equitable relief are duplicative of his claims for benefits. Defendants further contend that the Release contained in the Separation Agreement is valid and enforceable and bars Plaintiff's claims.

### C. <u>Legal Standard</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation omitted). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge*

*Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim." (citations omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party cannot defeat summary judgment by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The pleadings of *pro se* plaintiffs are construed liberally. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### D. 2008 Pension Plan Amendment (ECF Nos. 60, 92)[3]

Plaintiff moves for partial summary judgment "as to the validity and enforceability of the 2008 Amendment" to the Pension Plan. (ECF No. 60 at 1). Plaintiff contends that the 2008 Amendment is invalid and unenforceable because: (1) the 2008 Amendment

---

[3] Defendants object to Plaintiff's Exhibits 3-5, pension plan participant statements for Amar Dawood, Sabreen Najeeb, and Danny Barka, on the grounds that the Exhibits are not authenticated, lack foundation, and are inadmissible hearsay. (*See* ECF No. 74 at 12-13). Defendants' objections are overruled as moot— consideration of Exhibits 3-5 is not necessary for this Order.

violates the Adoption Agreement; (2) the 2008 Amendment is discriminatory; and (3) Calbiotech failed to comply with mandatory notice requirements.

Defendants contend that the 2008 Amendment does not violate the Adoption Agreement. Defendants contend that the 2008 Amendment is not unlawfully discriminatory. Defendants further contend that Plaintiff was not entitled to any notice under the Pension Plan.

### 1.   Violation of the Adoption Agreement

Plaintiff contends that the 2008 Amendment to the Pension Plan violates the Adoption Agreement because the Adoption Agreement "does not authorize Calbiotech or Plan Trustees to amend the Plan and the Adoption Agreement." (ECF No. 60 at 5). Plaintiff further contends that the 2008 Amendment impermissibly "declare[s]" certain individuals who do not meet the eligibility requirements of the Adoption Agreement to be participants in the Pension Plan. (*Id.* at 6).

Defendants contend that the "Basic Plan Document authorizes the employer to amend the Plan at any time." (ECF No. 74 at 25). Defendants further contend that the 2008 Amendment "does not name any particular individual to be a 'participant'; rather, it identifies the individuals who may become participants after satisfaction of the Plan's participation eligibility requirements." (*Id.* at 13 n.2).

"Section 402 of ERISA requires employee benefit plans to specify both an amendment procedure and a procedure for identifying persons with authority to amend. These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) (citation omitted). With few exceptions, "[t]he 'anti-cutback' rule of [ERISA], 29 U.S.C. § 1054(g), prohibits any amendment of an employee benefits plan that would reduce a participant's 'accrued benefit.'" *Andersen v. DHL Ret. Pension Plan*, 766 F.3d 1205, 1207 (9th Cir. 2014).

Calbiotech established and adopted the Pension Plan on December 28, 2008, with a retroactive effective date of September 1, 2008. The Adoption Agreement provides that the

"Eligible Class of Employees" to participate in the Pension Plan is "[a]ll Employees," except for certain non-resident aliens and employees whose employment is governed by collective bargaining agreements. (*Id.*). The Adoption Agreement incorporates the Basic Plan. (*See id.* at 2 (providing that the Adoption Agreement is "For Use With BASIC PLAN #02.")). The Basic Plan provides that the "Sponsoring Employer may amend the plan . . . at any time," subject to several restrictions not applicable to the facts of this case. (ECF No. 74-5 at 6). Calbiotech adopted the 2008 Amendment to the Pension Plan concurrently with the Adoption Agreement—on December 28, 2008, effective September 1, 2008. The 2008 Amendment amended the "Eligible Class of Employees" provision to state, in relevant part:

> All of the Employees other than Noori Barka, Evelyn Barka, David Barka, Danny Barka, Ann Barka, Amar Dawood, and Sabreen Najeeb are not participants under the Pension Plan. The excluded employees are covered with comparable average benefits by the Calbiotech, Inc. 401(k) Profit Sharing Plan.

(ECF No. 74-6 at 2).

The 2008 Amendment to the Pension Plan complies with the Basic Plan's provisions, which state that Calbiotech may amend the Pension Plan in writing at any time. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85 (1995) ("[W]hatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level."). The Basic Plan was incorporated to the Adoption Agreement and makes up part of the Pension Plan. *See Gunn v. Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 149 (9th Cir. 2010) (stating that an ERISA employee benefit plan "may be made up of several booklets and documents"); *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991) ("ERISA requires only that an employee benefit plan be established and maintained by a 'written instrument.' 29 U.S.C. § 1102(a)(1). No additional formalities are required. In particular, there is no requirement that documents claimed to collectively form the employee benefit plan be labelled as such."). Pension Plan benefits had not accrued to any employee at the time the 2008 Amendment was adopted

because the 2008 Amendment was adopted contemporaneously with the Adoption Agreement. While the 2008 Amendment excludes a class of employees from participation in the Pension Plan, the 2008 Amendment does not purport to confer participant status on any individual or otherwise supersede the eligibility requirements in the Adoption Agreement. The Court concludes that Plaintiff has failed to provide evidence to show that the 2008 Amendment violates the Adoption Agreement.

### 2. Discrimination

Plaintiff contends that the 2008 Amendment unlawfully "discriminates in favor of Highly Compensated Employees" as defined by the Internal Revenue Service ("IRS") Code. (ECF No. 60 at 6). Plaintiff further contends that the 2008 Amendment violates the Treasury Regulations, 26 C.F.R. § 1.410(b)-4, "because it establishes a class of employees who benefit under The Plan by enumerating those individuals by name." (ECF No. 92-1 at 4).

Defendants contend that "[n]either ERISA nor any other statute prohibits or creates a remedy for the alleged discrimination Plaintiff incorrectly asserts." (ECF No. 74 at 17; ECF No. 97 at 13). Defendants further contend that the 2008 Amendment is not discriminatory because "comparable average benefits are provided by the Calbiotech, Inc. 401(k) Profit Sharing Plan" to employees excluded from participation in the Pension Plan. (*Id.* at 19).

The IRS Code requires that a pension plan "not discriminate in favor of highly compensated employees" to qualify for favorable tax treatment. 26 U.S.C. § 401(a)(4). The Treasury Regulations set forth additional non-discrimination requirements that an ERISA plan must satisfy to qualify for preferential tax treatment. *See* 26 C.F.R. § 1.410(b)-4. The IRS Code and the Treasury Regulations do not create any substantive right or provide for any standards governing employee benefit plans under ERISA. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1197 n.12 (9th Cir. 1996) ("Internal Revenue Code provisions and Treasury regulations do not create substantive rights under ERISA . . . ."), *vacated en banc on other grounds*, 120 F.3d 1006 (9th Cir. 1997); *see also Furnari v.*

*Dornan*, No. 92-55198, 1993 WL 501517, at *2 (9th Cir. Dec. 6, 1993) ("There is no basis . . . in ERISA, to find that the provisions of IRC § 401—which relate solely to the criteria for tax qualification under the Internal Revenue Code—are imposed on pension plans by the substantive terms of ERISA." (quoting *Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986))). Plaintiff has not identified any provision of ERISA that prohibits the alleged discrimination in favor of highly compensated or named employees. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 91 (1983) ("ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."). The Court concludes that Plaintiff has failed to show that the 2008 Amendment is invalid or unenforceable on the grounds that it is discriminatory.

### 3. Notice

Plaintiff contends that Calbiotech failed to provide notice of the 2008 Amendment, as required by ERISA. Plaintiff further contends that "[t]he [C]ourt has already determined, by the Order filed on June 3, 2021" that "Plaintiff meets ERISA's definition of 'Participant' [in the Pension Plan] and therefore has standing" to challenge notice. (ECF No. 75 at 4).

Defendants contend that Plaintiff was not entitled to notice of the 2008 Amendment because Plaintiff was not eligible to participate in the Pension Plan at any time. Defendants further contend that Calbiotech was not required to provide notice of the 2008 Amendment to any employee, because at the time of the 2008 Amendment "no applicable individual . . . had yet accrued any benefits." (ECF No. 74 at 22).

Section 204(h) of ERISA provides that a "pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides [] notice . . . to each applicable individual." 29 U.S.C. § 1054(h). An "applicable individual" means "each participant in the plan" and certain beneficiaries whose "rate of future benefit accrual under the plan may reasonably be expected to be significantly reduced by such pan amendment." 29 U.S.C. § 1054(h)(8)(A).

The 2008 Amendment to the Pension Plan was adopted and took effect concurrently with the Adoption Agreement. The 2008 Amendment limits the class of employees eligible

to participate in the Pension Plan to seven named individuals, not including Plaintiff. Plaintiff was not entitled to notice under Section 204(h) because Plaintiff was not eligible to participate in the Pension Plan at any time. The Court concludes that Plaintiff has not provided evidence that the Calbiotech failed to comply with mandatory notice requirements. Plaintiff's Motion for Partial Summary Judgment or Declaratory Judgment as to the validity and enforceability of the 2008 Amendment to the Pension Plan (ECF No. 60) and Plaintiff's Motion for Partial Summary Judgment to Void Amendment (ECF No. 92) are denied.[4]

## E. Claims for Benefits and Breach of Fiduciary Duties (Claims 1-3) (ECF No. 83)

Defendants move for partial summary judgment on Plaintiff's first three claims for Pension Plan and 401(k) Plan benefits under 29 U.S.C. § 1132(a)(1)(B), breach of ERISA fiduciary duties under 29 U.S.C. §§ 1109(a) and 1132(a)(2), and breach of ERISA fiduciary duties under 29 U.S.C. §§ 1109(a) and 1132(a)(3). Defendants contend that (1) Plaintiff lacks standing to bring claims for Pension Plan benefits or on behalf of the Pension Plan; (2) Plaintiff's claims for 401(k) Plan benefits are barred by the applicable limitations period; and (3) Plaintiff's claims for additional equitable relief are duplicative of Plaintiff's claims for benefits.

Plaintiff contends that he has standing to bring claims for Pension Plan benefits and on behalf of the Pension Plan. Plaintiff contends that the statute of limitations should be tolled because Defendants prevented Plaintiff from filing a timely claim. Plaintiff further contends that his claims for additional equitable relief are distinct from his claims for benefits.

///

---

[4] Defendants' Cross-Motion for Legal Findings and Conclusions (ECF No. 97) is denied as moot. (*See infra* Section II.e.i (granting summary judgment in favor of Defendants on Plaintiff's claims seeking Pension Plan benefits)).

### 1. Pension Plan

Defendants contend that they are entitled to partial summary judgment on Plaintiff's first claim for Pension Plan benefits and on the second and third claims to the extent that those claims "seek relief in the form of Pension Plan benefits." (ECF No. 83-1 at 16). Defendants contend that "Plaintiff lacks statutory and Article III standing to bring a claim for benefits under the Pension Plan" because Plaintiff is neither a participant nor a beneficiary under ERISA. (*Id.* at 12, 15). Defendants further contend that Plaintiff lacks standing to assert a claim on behalf of the Pension Plan.

Plaintiff contends that he has standing because the 2008 Amendment excluding Plaintiff from eligibility for participation in the Pension Plan is invalid and unenforceable. Plaintiff further contends that the Court already ruled that he is "a participant for the purposes of bringing a claim for ERISA benefits" in its Order resolving Defendants' Motion to Dismiss the FAC. (ECF No. 87 at 2).

To bring a claim for benefits under ERISA, the plaintiff "must be an ERISA 'participant' or 'beneficiary' who may be entitled to benefits under the Plans." *Crotty v. Cook*, 121 F.3d 541, 544 (9th Cir. 1997). To obtain relief under 29 U.S.C. § 1132(a)(2) or (3), the plaintiff must likewise be "a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a). The term 'participant' means 'any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer.'" *Crotty*, 121 F.3d at 544 (quoting 29 U.S.C. § 1002(7)). "In order to establish that [a former employee] may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989)).

The Court has determined that Plaintiff was not eligible to participate in the Pension Plan at any time. There are no facts from which to infer that Plaintiff may become eligible for Pension Plan benefits in the future. Defendants have presented evidence that Plaintiff lacks standing to bring a claim under, or on behalf of, the Pension Plan. Plaintiff has failed

to come forward with contravening evidence. The Court concludes that Defendants are entitled to partial summary judgment as to the first three claims to the extent they assert ERISA violations relating to the Pension Plan.

### 2. 401(k) Plan Benefits

Defendants contend that they are entitled to partial summary judgment on Plaintiff's first claim for 401(k) Plan benefits and on the second and third claims to the extent that those claims seek relief in the form of the payment of 401(k) Plan benefits to Plaintiff. Defendants contend that Plaintiff's claims for 401(k) Plan benefits are barred by the 180-day limitations period set forth in the 401(k) Plan. Defendants further contend that "Plaintiff has proffered no evidence . . . that Defendants somehow prevented Plaintiff from [timely] filing the present civil action." (ECF No. 90 at 5).

Plaintiff contends that the contractual limitations period should be tolled because Defendants "hampered and inhibited the ability of Plaintiff to file his complaint within 180 days" by "refus[ing] to provide a record of [Plaintiff's] deposits and payments to his 401(k) account," "refus[ing] to communicate," and providing an administrative claim file that did not "include required information." (ECF No. 87 at 3-4).

The "statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California" is four years from the date of accrual. *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 648 (9th Cir. 2000); Cal. Civ. Proc. Code § 337. Parties may contract for a different limitations period in an ERISA plan. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 109 (2013). The court "must give effect to the Plan's limitations provision unless [the court] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Id.* (quoting *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608 (1947)).

In this case, the 401(k) Plan, effective as of September 1, 2016, provides:

**Final review.** If the Plan Administrator makes a final written determination denying a Participant's or Beneficiary's benefit claim, the Participant or

16

> Beneficiary may commence legal or equitable action with respect to the denied claim upon the completion of the claims procedures under this Section 11.07. Any legal or equitable action must be commenced no later than the earlier of:
>
> (1) 180 days following the date of the final determination or
>
> (2) Three years following the proof of loss.
>
> If a claimant fails to commence legal or equitable action with respect to the denied claim within the above timeframe, the claimant will be deemed to have accepted the Plan Administrator's final decision with respect to the claim for benefits.

(ECF No. 74-9 at 192).

Plaintiff filed an administrative claim for benefits under the 401(k) Plan on July 6, 2018, alleging, in relevant part, that Calbiotech failed to make mandatory contributions to Plaintiff's 401(k) account and that Defendant David Barka converted funds from Plaintiff's 401(k) payroll deductions. Calbiotech denied the claim on January 1, 2019. On March 2, 2019, Plaintiff filed an administrative appeal. Calbiotech denied the appeal on April 30, 2019. The denial letter stated:

> This determination by the Plan Administrator represents a final determination of the Plan Administrator of your claims on appeal. If you believe you have been denied a benefit to which you are entitled, then in accordance with the Plan documents you have the right to file a claim under [29 U.S.C. § 1132(a)] in a court of competent jurisdiction. Any such action must be commenced no later than the earlier of (1) 180 days following the date of this final determination, or (b) three years following the proof of loss. If you fail to commence any such action with respect to the denied claim(s) within the above timeframe, you will be deemed to have accepted the Plan Administrator's final determination.

(ECF No.74-9 at 627-28). Plaintiff filed an action for 401(k) benefits in this Court on December 2, 2019.

Plaintiff was contractually obligated to commence legal action concerning his claim for benefits within 180 days of Calbiotech's final determination denying Plaintiff's claim. Plaintiff filed his claim for 401(k) Plan benefits 216 days after Calbiotech's final

determination. The 180-day limitations period was not unreasonably short or precluded by a controlling statute. *See Sargent v. S. Cal. Edison 401(k) Savings Plan*, No. 20-cv-1296-MMA (RBB), 2020 WL 6060411, at *6 (S.D. Cal. Oct. 14, 2020) (collecting cases and finding that a 180-day period was reasonable). Plaintiff's claims for 401(k) benefits are barred by the contractual limitations period, unless tolling applies.

"In the rare cases where internal review prevents participants from bringing" an action for ERISA benefits "within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed." *Heimeshoff*, 571 U.S. at 114.

> If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense. To the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply.

*Id.* (citations omitted). "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 750 (9th Cir. 2014) (quoting *LaMantia v. Voluntary Plan Adm'rs, Inc.*, 401 F.3d 1114, 1119 (9th Cir. 2005)).

Plaintiff requests tolling because Defendants' "omissions and actions in violation of their internal claim procedures directly hampered and inhibited the ability of Plaintiff to file his complaint within 180 days." (ECF No. 87 at 3). Plaintiff asserts that (1) Defendants "refused to provide a record of [Plaintiff]'s deposits and payments to his 401(k) account" between July 2018 and January 2019; (2) the Plan Administrator and fiduciaries refused to communicate with Plaintiff "in 2018 and 2019 and throughout the claims process"; and (3) the administrative record provided on February 5, 2019 was missing plan documents. (*Id.* at 3-4).

18

The evidence in the record demonstrates that Defendants provided Plaintiff with a record of Plaintiff's 401(k) account contributions on January 10, 2019. Plaintiff received the administrative record on February 5, 2019. The conduct that Plaintiff asserts prevented him from filing a timely claim occurred prior to the commencement of the limitations period—i.e. the denial of Plaintiff's administrative claim on April 30, 2019. Plaintiff does not identify conduct that prevented him from bringing an action after his administrative appeal was denied. Plaintiff has failed to come forward with evidence that Calbiotech prevented Plaintiff from filing a timely claim for 401(k) Plan benefits. The Court concludes that Defendants are entitled to partial summary judgment as to the first claim seeking 401(k) Plan benefits. Defendants are further entitled to partial summary judgment as to the second and third claims to the extent that those claims seek relief in the form of payment of 401(k) Plan benefits to Plaintiff.

### 3.  401(k) Duplicative Relief[5]

Defendants contend that they are entitled to partial summary judgment on Plaintiff's second and third claims for breach of ERISA fiduciary duties relating to the 401(k) Plan on the grounds that the additional relief sought by Plaintiff is "essentially identical relief as the claim for [401(k) Plan] benefits, thus requiring dismissal of such claims as duplicative when [29 U.S.C. § 1132(a)(1)(B)] would otherwise afford the requested relief." (ECF No. 83-1 at 19).

Plaintiff contends that "the relief sought under claims one, two, and three is not duplicative." (ECF No. 87 at 4). Plaintiff further contends that "claims under [§§] 1132(a)(1)(B) and 1132(a)(3) may proceed simultaneously so long as there is no double recovery." (*Id.* at 5).

---

[5] The Court does not address the issue of duplicative relief with respect to Plaintiff's claims regarding the Pension Plan because the Court has concluded that Plaintiff is not a participant or beneficiary in the Pension Plan.

Plaintiff's second claim under 29 U.S.C. § 1132(a)(2) gives a remedy for injuries to an ERISA plan—and is thus distinct from a claim for individual benefits under § 1132(a)(1)(b). *Cf. LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (stating that § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"). Plaintiff's third claim is brought under § 1132(a)(3), which is a "catchall provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016) (first three alterations in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)); *see* 29 U.S.C. § 1132(a)(3); *Wise v. Verizon Communs. Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (stating that a plaintiff "may not resort to this equitable catchall provision to seek the same relief" under another ERISA provision). Under these causes of action, a court may award "appropriate" equitable relief. 29 U.S.C. § 1109(a); *see also* 29 U.S.C. § 1132(a)(3) (stating that a plaintiff is entitled to "obtain other appropriate equitable relief" under the catchall provision).

The second and third claims allege that the following conduct relating to the 401(k) Plan violated ERISA: (1) Defendants "intentionally withheld plan documents" from Plaintiff and participants; (2) Defendants "misled" Plaintiff and participants "regarding Calbiotech['s] [ ] mandatory contributions"; and (3) Defendants "failed to remit employee payroll deductions to 401(k) accounts." (ECF No. 64 ¶¶ 73, 76). Plaintiff's first three claims seek benefits under the 401(k) Plan, "the removal of Defendants as fiduciaries and trustees," "the appointment of an independent actuary," and "all appropriate remedial or equitable relief." (ECF No. 65 at 15-16). The Court has granted summary judgment to Defendants as to the first claim and as to the second and third claims to the extent that those claims seek relief in the form of payment of 401(k) Plan benefits to Plaintiff. Plaintiff's second and third claims are not duplicative of Plaintiff's first claim for benefits because Plaintiff is unable to proceed with his claim for benefits. *See Varity*, 516 U.S. at 515 ("The plaintiffs in this case could not proceed under the *first* subsection because they were no longer members of the Massey-Ferguson plan and, therefore, had no benefits due [them]

under the terms of [the] plan. They could not proceed under the *second* subsection because that provision, tied to § 409, does not provide a remedy for individual beneficiaries. They must rely on the *third* subsection or they have no remedy at all."). Further, the Court of Appeals has recognized that claims under different subsections of ERISA "may proceed simultaneously so long as there is no double recovery." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016) (endorsing "[t]he Eighth Circuit's reading [that] permits plaintiffs to present § 1132(a)(1)(B) and § 1132(a)(3) as alternative—rather than duplicative—theories of liability"). The Court concludes that Defendants are not entitled to partial summary judgment on the grounds that the equitable relief sought by Plaintiff in connection with claims two and three regarding the 401(k) Plan is duplicative of Plaintiff's first claim for 401(k) Plan benefits.[6]

Defendants' Motion for Partial Summary Judgment or Alternatively Summary Adjudication (ECF No. 83) is granted as to (1) the first claim in the SAC; (2) the second and third claims in the SAC to the extent those claims assert ERISA violations relating to the Pension Plan; and (3) the second and third claims in the SAC to the extent those claims seek payment of benefits under the 401(k) Plan to Plaintiff. Plaintiff may proceed with the second and third claims to the extent that they seek other equitable relief for violations relating to the 401(k) Plan.

///

///

///

---

[6] The Court denies Plaintiff's request for "a legal determination" that "the only relief Plaintiff could potentially be entitled to obtain under claims two and three is removal of Defendants as fiduciaries" as premature at this stage in the litigation. (ECF No. 83-1 at 18); *see* Fed. R. Civ. P. 54(c) (stating that a final judgment other than a default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

### F. __Waiver (ECF Nos. 79, 102, 106)__[7]

Plaintiff moves for partial summary judgment "as to the validity and enforceability of the 2016 Separation Agreement" between Plaintiff and Calbiotech. (ECF No. 79 at 1; *see also* ECF No. 46 at 11 (Defendants' answer raising as a defense that "Plaintiff's claims . . . are barred by operation of the Separation Agreement"); ECF No. 102-1 at 1). Plaintiff contends that the Release of Plaintiff's claims in the Separation Agreement is "invalid, void, or unenforceable against all claims in this action" because "[b]oth of Calbiotech's retirement plans explicitly bar the release . . . of rights, claims, or benefits due under the Plans." (ECF No. 79-1 at 2, 5-6). Plaintiff contends that the Release is "invalid, void, or unenforceable . . . [against] any claims under Count 2 in this action (29 U.S.C. 1132(a)(2)) for claims brought on behalf of the Plans" because the Release "does not bar claims brought on behalf of the Plans." (*Id.* at 2, 6).[8] Plaintiff contends in the alternative that the Release contained in the Separation Agreement is "void and unenforceable" because it did not represent a "knowing and voluntary waiver of ERISA rights and claims." (ECF No. 102-1 at 2). Plaintiff further contends that (1) the Separation Agreement does not effectively waive unknown claims; and (2) the covenant not to sue contained in the Separation Agreement is unenforceable for lack of consideration.

Defendants contend that claims for ERISA benefits may be waived by contract. Defendants contend that the Separation Agreement "does not serve to assign, transfer, sell, pledge, or in any other way alienate . . . any of Plaintiff's purported rights in any ERISA-

---

[7] Plaintiff objects to the following material referenced in Defendants' Opposition and Cross-Motion for Partial Summary Judgment: (1) a deposition transcript, and (2) evidence of prior arrests for criminal conduct. (*See* ECF No. 113 at 2). Plaintiff's objections are overruled as moot—consideration of this material is not necessary for this Order.

[8] The Court does not address Plaintiff's contention that the Separation Agreement is invalid, void, or unenforceable against Plaintiff's first claim for benefits because the Court has granted partial summary judgment in favor of Defendants on the first claim. The Court further does not address Plaintiff's contention that language in the Pension Plan bars the Release because Plaintiff is not a participant or beneficiary in the Pension Plan.

governed benefit plan" and is not invalidated by anti-alienation and anti-assignment provisions. (ECF No. 84 at 7). Defendants contend that Section Four of the Separation Agreement demonstrates that Plaintiff released claims "in both an individual and derivative (or representative) capacity." (*Id.* at 8). Defendants move for cross-summary judgment "requesting the Court find that Plaintiff's signing the [Separation] Agreement and his release of claims as provided for therein was indeed a knowing and voluntary waiver and release of claims, and that Plaintiff has breached the Agreement." (*Id.* at 5). Defendants contend that the Separation Agreement effectively waives unknown claims and the covenant not to sue does not require additional consideration.

Plaintiff seeks partial summary judgment regarding the enforceability of the Release in the Separation Agreement on the basis that the 401(k) Plan bars the Release. "By its terms, [ERISA's] antialienation provision, § 1056(d)(1), requires a plan to provide expressly that benefits be neither 'assigned' nor 'alienated,' the operative verbs having histories of legal meaning: to assign is [t]o transfer; as to assign property, or some interest therein, and to alienate is [t]o convey; to transfer the title to property." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 292 (2009) (second and third alterations in original) (quotations and citations omitted). However, a waiver or release that disclaims an interest but does not transfer it to another entity does not violate § 1056. *See id.* at 292-97. Courts have uniformly permitted private releases of ERISA claims. *See Upadhyay v. Aetna Life Ins. Co.*, No. C 13-1368 SI, 2014 WL 186709, at *3 (N.D. Cal. Jan 16, 2014) (collecting cases).

In this case, the 401(k) Basic Plan includes an anti-alienation provision that provides:

> Except as permitted under applicable statute or regulation, a Participant or Beneficiary may not assign, alienate, transfer or sell any right or claim to a benefit or distribution from the Plan, any attempt to assign, alienate, transfer or sell such a right or claim shall be void, except as permitted by statute or regulation . . . .

(ECF No. 74-9 at 215).

On December 7, 2016, Plaintiff entered into the Separation Agreement with Calbiotech. The Separation Agreement provides in relevant part:

> 3. **Release.** Employee . . . does hereby completely release and forever discharge Company . . . from and against all claims . . . of any and every kind, nature, and character whatsoever, that Employee has now, has ever had, or may have in the future against Company . . . based on any acts or omissions by Company . . . as of the date of the execution of this Agreement by Employee, including, without limitation, any and all claims arising out of Employee's rendering of services to Company or the termination of Employee's services, including, without limitation, any and all claims, whether based on tort, contract, or any federal, state, or local law, statute, or regulation or based on or related to the Age Discrimination in Employment Act (29 USC §§ 621-634); Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e-2000e-17), as amended by the Civil Rights Act of 1991 (42 USC §§ 1981-1988); the Americans with Disabilities Act of 1990 (42 USC §§ 12101-12213); or the California Fair Employment and Housing Act (California Government Code §§ 12900-12996) (referred to collectively as the "Released Claims"), to the fullest extent allowed at law. The Released Claims do not include those that the law does not allow Employee to release. Notwithstanding the foregoing, Employee agrees to waive the right to recover monetary damages in any charge, complaint, or lawsuit filed by Employee or anyone else on Employee's behalf for any Released Claims.
>
> 4. **No Legal Action.** Employee represents that Employee has not filed, initiated, or caused to be filed or initiated any legal action covering any Released Claim and agrees that Employee will never file, initiate, or cause to be filed or initiated, at any time after the execution of this Agreement, any claim, charge, suit, complaint, action, or cause of action, in any state or federal court or before any state or federal administrative agency, based in whole or in part on any Released Claim. Further, Employee shall not participate, assist, or cooperate in any suit, action, or proceeding against or regarding the Released Parties, or any of them, unless compelled to do so by law.

(ECF No. 40-7 at 3).

The Release in the Separation Agreement does not assign, alienate, transfer, or sell any ERISA benefit and is not barred by the 401(k) Plan's anti-alienation provision or § 1056(d). Plaintiff has not identified any other section of the 401(k) Plan that prohibits the Release. The Court concludes that Plaintiff is not entitled to partial summary judgment on

the grounds that the Release is "invalid, void, or unenforceable against all claims in this action" because "Calbiotech's [401(k) Plan] explicitly bar[s] the release . . . of rights, claims, or benefits due under the Plan[]." (ECF No. 79-1 at 2, 5-6).

Plaintiff seeks partial summary judgment regarding the enforceability of the Release in the Separation Agreement against the second claim on the basis that the 401(k) Plan did not consent to the Release. A release of claims brought on behalf of a retirement plan requires the consent of the plan. *See Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 (3d Cir. 2009) ("The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under [§ 1132(a)(2)].")." The individual Release in Section Three of the Separation Agreement does not divest the 401(k) Plan of its ability to recover for a breach of fiduciary duty. However, the Release further states that Plaintiff will "not participate, assist, or cooperate in any suit, action, or proceeding against or regarding the Released Parties." (ECF No. 40-7 at 3). Accordingly, Plaintiff is not entitled to partial summary judgment on the grounds that the Release is "invalid, void, or unenforceable . . . [against] any claims under Count 2 in this action (29 U.S.C. 1132(a)(2)) for claims brought on behalf of the Plans." (ECF No. 79-1 at 2, 6).

Plaintiff and Defendants each seek partial summary judgment regarding whether Plaintiff entered into the Separation Agreement knowingly and voluntarily. A release or waiver of ERISA claims must be "knowing[] and voluntar[y]." *Gonda v. Permanente Med. Grp.*, 691 F. App'x 397, 399 (9th Cir. 2017) (citing *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 (1st Cir. 1999)). A waiver of ERISA claims is subject to "heightened scrutiny," and the Court is obligated to "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights." *Morais*, 167 F.3d at 713; *accord Vizcaino*, 120 F.3d at 1012. In determining whether a waiver is knowing and voluntary, courts examine the totality of the circumstances, including:

(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver.

*Morais*, 167 F.3d at 713 n.6.

The evidence in the record demonstrates that Plaintiff attended college but did not attain a college degree. Plaintiff worked for Calbiotech as a scientist and manager in a laboratory setting. While Plaintiff did not participate in the preparation of the Separation Agreement, the Release states: "the parties agree that each party shall be responsible for the payment of his, her, or its own costs, attorney fees, and all other expenses in connection with the negotiation of this Agreement or any of the Released Claims." (ECF No. 40-7 at 4). The Separation Agreement provides for the release of "any and all claims, whether based on tort, contract or any federal, state, or local law, statute or regulation," but does not explicitly mention the 401(k) Plan or ERISA. The Separation Agreement provides that Plaintiff was entitled to twenty-one days in which to review the Separation Agreement and had the right to revoke the Separation Agreement within seven days of signing it. Plaintiff executed the Separation Agreement the day after he received the Separation Agreement without consulting an attorney or having been advised to seek counsel. Plaintiff received consideration in the amount of $12,500.

At this stage in the litigation, some of the relevant factors favor Defendants, while others favor Plaintiff. Based on the evidence in the record, whether Plaintiff knowingly and voluntarily waived his ERISA claims is a question of fact inappropriate for resolution on summary judgment. *See, e.g., Colaco v. Asia Advantage Simplified Emp. Pension Plan*, No. 5:13-cv-00972-PSG, 2015 WL 5655465, at *8 (N.D. Cal. Sept. 24, 2015) (denying summary judgment where "some factors, such as the amount of time Plaintiffs had to review the agreement and consideration, favor Defendants. Other factors favor Plaintiffs, such as Defendants' role in determining the waiver provisions and the clarity of the agreement. Still others are ambiguous, such as Plaintiffs' education and business

sophistication and whether Plaintiffs had independent advice."); *Rombeiro v. Unum Ins. Co. of Am.*, 761 F. Supp. 2d 862, 869 (N.D. Cal. 2010) (same where the release did not mention the plan or ERISA by name, the plaintiff did not consult with an attorney, and the agreement was a contract of adhesion). The parties' respective requests for partial summary judgment on the issue of whether the Release contained in the Separation Agreement was knowing and voluntary are denied.

Plaintiff seeks partial summary judgment regarding the enforceability of the Release in the Separation Agreement against unknown claims on the basis that California law precludes the release of unknown claims in this case. The Separation Agreement purports to waive existing claims unknown to Plaintiff at the time of execution. California Civil Code Section 1542 "precludes the application of a release to unknown claims in the absence of a showing, apart from the words of the release, of an intent to include such claims." *Casey v. Proctor*, 59 Cal. 2d 97, 109 (1963). However, Section Five of the Separation Agreement states: "Employee hereby waives any and all rights or benefits that he may have under the terms of California Civil Code § 1542" and contains the text of Section 1542. (ECF No. 40-7 at 3). Unlike in *Casey*, the Separation Agreement states that Plaintiff waives the application of Section 1542. *See Harris v. California*, No. CV 10-9760 DSF (PLAx), 2012 WL 13006024, at *4 (C.D. Cal. July 25, 2012) ("The Court notes that the Release signed by Harris Sr. contains a waiver of § 1542's provisions. Both the California Supreme Court and California appellate courts, while acknowledging *Casey*, have concluded that this type of waiver is sufficient evidence of the parties' intent to waive unknown claims." (citing *Jefferson v. California Dept. of Youth Authority*, 28 Cal. 4th 299, 307 (2002) and *Winet v. Price*, 4 Cal. App. 4th 1159, 1170-71 (1992)). Plaintiff is not entitled to partial summary judgment on the grounds that the Separation Agreement is unenforceable with respect to unknown claims.

Plaintiff seeks partial summary judgment regarding the enforceability of the covenant to take no legal action contained in the Separation Agreement on the basis that the covenant is not supported by separate consideration. The Separation Agreement

provides for consideration "as full and complete settlement of any and all disputed claims or potential disputes that [Plaintiff] may have against [Calbiotech]." (ECF No. 40-7 at 2). "California courts have long held that 'where the writing is plain and explicit and given for the express purpose of effecting a complete release of the obligation, a consideration is not necessary.'" *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 470 (9th Cir. 1987). As a result, there is no need for separate consideration to support Plaintiff's promise to take no legal action. *See id.* (explaining that no separate consideration was needed to release bad faith claims); *Gonda v. The Permanente Med. Grp., Inc.*, No. 11-cv-01363-SC, 2015 WL 678969, at *9 (N.D. Cal. Feb. 17, 2015) *aff'd*, 691 Fed. Appx. 397 (9th Cir. 2017) (stating that a release of ERISA claims was sufficiently supported by consideration in an agreement that was "earmarked specifically for lost wages and emotional distress"). Plaintiff is not entitled to partial summary judgment on the grounds that the covenant not to sue is unenforceable for lack of separate consideration.

The Court denies Plaintiff's Motion for Partial Summary Judgment or Declaratory Judgment Regarding Waiver (ECF No. 79) and Motion for Summary Judgment or Partial Summary Judgment to Void Waiver (ECF No. 102). The Court further denies Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 106).

## III.  MOTION TO DISMISS (ECF No. 77)

### A. <u>Contentions</u>

Defendants contend that the Court should dismiss the fourth claim in the SAC for ERISA interference. Defendants contend that the ERISA interference claim is barred by the two-year statute of limitations, and the SAC fails to plead facts sufficient to support an inference that fraudulent concealment tolls the statute of limitations under Rule 9(b) of the Federal Rules of Civil Procedure. Defendants further contend that the SAC fails to allege facts sufficient to state a claim for ERISA interference, and that the allegations against Noori Barka "are particularly insufficient" because the SAC "does not mention Defendant

Noori Barka even once in the allegations underlying [the] Fourth Claim."[9] (ECF No. 77-1 at 22).

Plaintiff contends that the SAC pleads facts sufficient to support an inference that fraudulent concealment tolls the statute of limitations. Plaintiff contends that he "relied on a fraudulent [401(k) Plan document] provided by Defendants," which caused Plaintiff "to wrongly conclude that his termination was not an attempt to prevent him from exercising his rights under ERISA." (ECF No. 78 at 3). Plaintiff further contends that the SAC alleges facts sufficient to state a claim for ERISA interference and that the allegations against Noori Barka are sufficient because the SAC alleges that Noori Barka is the owner and CEO of Calbiotech and has control over Calbiotech's retirement plans, and because "discovery will show that Noori Barka was [Plaintiff's] direct supervisor at the time of his termination." (*Id.* at 4).

## B. Allegations in the SAC Regarding ERISA Interference

Plaintiff worked as a full-time scientist for Calbiotech beginning in May 2008 and ending in December 2016 and is a participant in the Calbiotech 401(k) Plan. Plaintiff made written requests to David Barka and Calbiotech for 401(k) Plan documents "as early as 2009." (ECF No. 64 ¶ 32). Calbiotech "fail[ed] or refus[ed] to provide [401(k)] Plan Documents over the course of nearly 9 years," from 2009 to 2018. (*Id.* ¶ 35).

On November 29, 2016, "David Barka sent [Plaintiff] a text message notifying [Plaintiff] of his immediate termination." (*Id.* ¶ 42). David Barka did not "give a specific reason for the termination . . ., and only explained, 'It's time we part ways.'" (*Id.* ¶ 44). In a phone call on November 30, 2016, David Barka "explained the reason [Plaintiff] was terminated was that 'things were not working out.'" (*Id.* ¶ 45). On December 1, 2016,

---

[9] Defendants also request that the Court dismiss the first through third claims in the SAC based on the arguments asserted in Defendants' Motion for Partial Summary Judgment. The Court has granted summary judgment in favor of Defendants on the first claim and has previously concluded that the second and third claims allege facts sufficient to survive a motion to dismiss. (*See* ECF No. 45). The Court does not consider Defendants' summary judgment arguments in ruling on the Motion to Dismiss.

David Barka told Plaintiff "that his position was eliminated and [Plaintiff] was, in effect, laid off." (*Id.* ¶ 46).

The "reason for termination ([that Plaintiff's] position was eliminated), is pretextual and false." (*Id.* ¶ 81). "In the months and weeks just prior to termination, beginning in July of 2016, [Plaintiff] made multiple written requests for Plan Documents describing the Calbiotech, Inc. 401(k) Profit Sharing Plan." (*Id.* ¶ 43). "David Barka and Calbiotech [] terminated [Plaintiff] in an attempt to retaliate against [Plaintiff] for requesting [401(k)] Plan documents and in an attempt to interfere with his right to receive and view Plan documents." (*Id.* ¶ 54).

Plaintiff was terminated on December 1, 2016. Plaintiff "made new requests for [401(k)] Plan Documents on Dec[ember] 7 and December 13, 2016 in order to rule out his suspicions that his termination was connected to his request for documents." (*Id.* ¶ 47). "Calbiotech provided a fraudulent [401(k) Plan document] to [Plaintiff] on Dec[ember] 14, 2016," which "falsely described employer contributions as discretionary" and "omitted existing mandatory or automatic employer contributions." (*Id.* ¶ 48). "The fraudulent [document] led [Plaintiff] to reasonably believe that his termination was not an attempt to prevent him from receiving or viewing Plan Documents and not related to his demand for Plan Documents." (*Id.* ¶ 49). "In January 2017, Calbiotech [] did not contest or deny to the California Employment Development Department that [Plaintiff] was terminated because his position was eliminated. This caused [Plaintiff] to further accept the pretextual excuse that his position was eliminated." (*Id.* ¶ 50). "In Jan[uary] 2019, Calbiotech provided [Plaintiff] with a complete administrative record, including all documents describing all versions of all of Calbiotech's retirement plans between 2008 and 2019. The fraudulent [401(k) Plan document] . . . was nowhere to be found within the complete administrative record." (*Id.* ¶ 51). "In March 2019, [Plaintiff] discovered that in February 2017 (less than three months after [Plaintiff's] termination), Calbiotech [] hired [another employee] to replace [Plaintiff] and take over his former duties." (*Id.* ¶ 52).

///

1

### C. Legal Standard

2    Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure

3 to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state

4 a claim for relief, a pleading "must contain . . . a short and plain statement of the claim

5 showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule

6 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of

7 sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular*

8 *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250

9 F.3d 729, 732 (9th Cir. 2001)).

10    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

12 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

13 "A claim has facial plausibility when the plaintiff pleads factual content that allows the

14 court to draw the reasonable inference that the defendant is liable for the misconduct

15 alleged." *Id*. The court must accept as true all "well-pleaded factual allegations." *Id.* at 679.

16 The court is not "required to accept as true allegations that are merely conclusory,

17 unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

18 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion

19 to dismiss, the non-conclusory factual content, and reasonable inferences from that content,

20 must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

21 *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Courts have a duty to construe pro se pleadings

22 liberally." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).

23    Claims sounding in fraud or mistake must additionally comply with the heightened

24 pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires

25 that a complaint "must state with particularity the circumstances constituting fraud or

26 mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and

27 how of the misconduct charged, as well as what is false misleading about the purportedly

28 fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d

1103, 1110 (9th Cir. 2017) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)), *as corrected* (Mar. 12, 2018). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989))).

### D. Discussion

29 U.S.C. § 1140 prevents employers from discharging a participant in a benefits plan "because of a specific intent to interfere with ERISA rights . . . ." *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990); *see* 29 U.S.C. § 1140. To demonstrate a violation of § 1140, the plaintiff must show: (1) he was engaged in activity protected under ERISA; (2) he suffered an adverse employment action; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *See Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989). "A claimant must show that employment was terminated because of a specific intent to interfere with ERISA rights in order to prevail under [§ 1140]; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." *Dytrt*, 921 F.2d at 896.

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). A plaintiff fails to state a claim where his failure to comply with the applicable statute of limitations is "apparent from the face of the complaint." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 628 F.2d 117, 119 (9th Cir. 1980)). The Court has previously concluded that the two-year statute of limitations on Plaintiff's claim for ERISA

interference began to run on November 29, 2016, when Plaintiff received notice of his termination. (*See* ECF No. 45 at 20). The Court has further concluded that the statute of limitations expired more than one year before Plaintiff filed his original complaint on December 2, 2019. (*See id.*). Plaintiff's ERISA interference claim is barred by the statute of limitations, unless tolling applies.

"A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citing *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986)). "A defendant's fraudulent concealment will toll the statute of limitations for that period during which the claim is undiscovered by a plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1049 (9th Cir. 2020). The plaintiff bears the burden of pleading fraudulent concealment. *See Hexcel*, 681 F.3d at 1060. To meet that burden, the plaintiff must allege facts showing that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have "actual []or constructive knowledge of the facts giving rise to its claim;" and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim. *Id.* (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988)). Fraudulent concealment must be pled with particularity. *See Conerly*, 623 F.2d at 120; *see also Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016) ("Although it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, Plaintiffs nevertheless must allege specific factual allegations of fraudulent concealment to survive a motion to dismiss.").

In this case, the SAC alleges that Calbiotech and David Barka terminated Plaintiff "in an attempt to retaliate against [Plaintiff] for requesting [401(k)] Plan documents and . . . to interfere with his right to receive and view Plan documents." (ECF No. 64 ¶ 54). In support of this claim, the SAC alleges that: (1) Plaintiff made "multiple written requests

for Plan Documents" in the "months and weeks just prior to termination" (*id.* ¶ 43); (2) Calbiotech hired another employee to replace Plaintiff "less than three months after [Plaintiff's] termination," even though David Barka told Plaintiff that Plaintiff was terminated because his position was eliminated (*id.* ¶ 52); and (3) Calbiotech provided Plaintiff with a fraudulent 401(k) Plan document after his termination. The SAC further alleges that fraudulent concealment tolls the statute of limitations, because "Calbiotech made false statements and provided false documents to [Plaintiff] immediately after his termination [that] caus[ed] him to reasonably believe that his termination was not connected to his request for documents." (*Id.* ¶ 55). Specifically, the SAC alleges that Plaintiff "made new requests for [401(k)] Plan Documents on Dec[ember] 7 and December 13, 2016 in order to rule out his suspicions that his termination was connected to his request for documents," and that "Calbiotech provided a fraudulent [401(k) Plan document] to [Plaintiff] on Dec[ember] 14, 2016," which "falsely described employer contributions as discretionary" and "omitted existing mandatory or automatic employer contributions." (*Id.* ¶ 47-48). The SAC alleges that Plaintiff did not discover that this document was fraudulent until December 2019, when Calbiotech provided Plaintiff with documents describing all versions of Calbiotech's retirement plans between 2008 and 2019, absent the allegedly fraudulent plan documents.

The facts alleged in the SAC support an inference that Plaintiff was terminated because of a specific intent to interfere with Plaintiff's ERISA rights. The facts alleged in the SAC further support an inference that Plaintiff was diligent in trying to uncover the facts giving rise to his ERISA interference claim, and that Calbiotech affirmatively misled Plaintiff by providing him with a fraudulent 401(k) Plan document on December 14, 2016. However, the SAC does not allege specific facts that identify the role of Noori Barka in the fraudulent scheme. *See Swartz*, 476 F.3d at 765 ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989))). The Court concludes that the SAC

plausibly states a claim for ERISA interference against Calbiotech and David Barka, and alleges sufficient facts to support an inference that fraudulent concealment tolled the statute of limitations until January 2019, when Plaintiff allegedly became aware of the fraudulent nature of the 401(k) Plan document he was provided on December 14, 2016. The Motion to Dismiss the fourth claim for ERISA interference is granted as to Defendant Noori Barka and otherwise denied.[10]

### E. **Motion to Strike Requests for Relief**

Defendants request that the Court strike paragraphs *i, l,* and *m,* of Plaintiff's prayer for relief. Defendants contend that if the Court dismisses the claim for ERISA interference, paragraph *i* "would no longer be applicable." (ECF No. 77-1 at 25). Defendants contend that paragraphs *l* and *m* "seek relief for claims that have been previously dismissed by the Court." (*Id.* at 24). Plaintiff contends that paragraphs *l* and *m* are properly included in the prayer for relief, because the ERISA claims "incorporate" the claims for conversion, fraud, and breach of fiduciary duty. (ECF No. 78 at 6).

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014). Motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005).

Paragraph *i* of the prayer for relief seeks relief for a violation of 29 U.S.C. § 1140, which is a pending claim in this case. Paragraphs *l* and *m* request that the Court

l. Order Defendants [to] return [Plaintiff's] converted property, plus lost

---

[10] Defendants alternatively move for a more definite statement "with respect to the relief Plaintiff is seeking for each individually asserted claim" and "with respect to . . . the named Defendants in [Plaintiff's] second and third causes of action." (ECF No. 77-1 at 25). Defendants' request for a more definite statement is denied because it is not timely. *See* Fed. R. Civ. P. 12(e) (a motion for a more definite statement "must be made before filing a responsive pleading").

1    interest and earnings [and]

2    m. Order general and compensatory damages for claims for fraud, conversion,
3    and breach of fiduciary duty in an amount to be determined at trial.

4    (ECF No. 64 at 17). The Court cannot conclude that the requests in paragraphs *l* and *m*

5    have no bearing on the subject matter of this litigation.[11] Defendants' motion to strike is

6    denied.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that Plaintiff Robert Raya's Motions for Partial Summary Judgment (ECF Nos. 60, 79, 92, 102) are denied.

IT IS FURTHER ORDERED that Defendants David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc., Calbiotech 401(k) Profit Sharing Plan, and Calbiotech Pension Plan's request that the Court consider the Sur-Reply (ECF No. 89) is granted.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or Alternatively for a More Definite Statement (ECF No. 77) is granted in part and denied in part. The motion is granted as to the fourth claim in the SAC against Defendant Noori Barka and is otherwise denied.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Judgment or Alternatively Summary Adjudication (ECF No. 83) is granted in part and denied in part. The motion is granted as to (1) the first claim in the SAC; (2) the second and third claims in the SAC to the extent those claims assert ERISA violations relating to the Pension Plan; and (4) the second and third claims in the SAC to the extent those claims seek payment of benefits under the 401(k) Plan to Plaintiff. The motion is denied as to the requests for other

---

[11] The Court does not address Defendants' assertions, raised for the first time on reply, that: (1) the recovery requested in paragraphs *l* and *m* of the prayer for relief is "inappropriate under 29 U.S.C. §§ 1132(a)(2) and (a)(3)" (ECF No. 81 at 8); and (2) the Court should strike paragraph *h* from the prayer for relief. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.") (alteration in original) (quoting *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012)).

equitable relief for violations relating to the 401(k) Plan that are associated with Plaintiff's second and third claims.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Legal Findings and Conclusions (ECF No. 97) is denied as moot.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 106) is denied.

Dated:  March 28, 2022

Hon. William Q. Hayes
United States District Court

19-cv-2295-WQH-AHG