UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAYA,<br><br>  Plaintiff,<br><br>v.<br><br>DAVID BARKA; NOORI BARKA; EVELYN BARKA; CALBIOTECH, INC.; CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; CALBIOTECH, INC. PENSION PLAN,<br><br>  Defendants.<br><br>DAVID BARKA; NOORI BARKA; EVELYN BARKA; CALBIOTECH, INC.; CALBIOTECH, INC. 401(k) PROFIT SHARING PLAN; CALBIOTECH, INC. PENSION PLAN,<br><br>  Counter Claimants,<br><br>v.<br><br>ROBERT RAYA,<br><br>  Counter Defendant. | Case No.: 19-cv-2295-WQH-AHG<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are: (1) the Motion to Amend Findings and Alter or Amend Judgment ("Motion to Amend Findings," ECF No. 212), filed by Plaintiff/Counter Defendant Robert Raya ("Plaintiff"); and (2) the Motion for Application of Costs and

1

Motion for Attorneys' Fees ("Motion for Fees," ECF No. 209), filed by Defendants/Counter Claimants David Barka, Noori Barka, Evelyn Barka, Calbiotech, Inc. ("Calbiotech"), Calbiotech, Inc. 401(k) Profit Sharing Plan (the "401(k) Plan"), and Calbiotech, Inc. Pension Plan (the "Pension Plan") (collectively, "Defendants").

## I. Background

The Court presumes familiarity with the background of this litigation, which has been set forth in the Court's prior Orders, most notably the March 28, 2022 Order adjudicating several motions to dismiss and motions for summary judgment (ECF No. 114), the January 3, 2023 Order adjudicating an additional motion for summary judgment (ECF No. 144), and the August 13, 2024 Order containing the Court's findings of fact and conclusions of law following a bench trial (ECF No. 206). In the August 13 Order, the Court found and concluded, among other things, that:

- Plaintiff knowingly and voluntarily waived his claims against Defendants;
- Defendants are entitled to judgment in their favor as to their Counterclaim for breach of contract and are entitled to damages as to their Counterclaim in the amount of $12,500;
- Defendants are entitled to judgment with prejudice in their favor as to Plaintiff's claim for retaliatory discharge/interference under 29 U.S.C. § 1132(a)(3); and,
- Defendants are entitled to judgment of dismissal without prejudice as to Plaintiff's claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2).

*Id*. at 41–42. On August 14, 2024, the Clerk of Court entered Judgment. (ECF No. 207.)

On August 28, 2024, Defendants filed a Bill of Costs, requesting that the Clerk tax costs in the amount of $4,321. (ECF No. 208.)

On August 28, 2025, Defendants filed the pending Motion for Costs and Fees, seeking the $4,321 in costs requested in the Bill of Costs, and $50,000 in attorneys' fees. (ECF No. 209.)

On September 10, 2024, Plaintiff filed the pending Motion to Amend Findings. (ECF No. 212.) Pursuant to Federal Rules of Civil Procedure 52(b) and 59, Plaintiff requests that the Court amend four statements made in the August 13 Order and add three additional findings of fact.

On September 17, 2024, the Clerk issued an Order Taxing Costs, taxing $3,017 in costs in favor of Defendants. (ECF No. 214.)

On September 23, 2024, Plaintiff filed a Response in opposition to the Motion for Fees (ECF No. 216), and, on September 30, 2024, Defendants filed a Reply (ECF No. 217).

On September 30, 2024, Defendants filed a Response in opposition to the Motion to Amend Findings (ECF No. 218), and, on October 7, 2024, Plaintiff filed a Reply (ECF No. 219).

## II.    Motion to Amend Findings

### A. Legal Standard

Rule 52(b) of the Federal Rules of Civil Procedure provides that in cases tried without a jury, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." "The purpose of a motion under Rule 52(b) 'is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence.'" *Mills v. Molina Healthcare, Inc.*, No. 2:22-CV-01813-SB-GJS, 2024 WL 4554094, at *1 (C.D. Cal. Sept. 17, 2024) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)). "Rule 52(b) motions are designed to correct findings of fact which are central to the ultimate decision, or to correct manifest errors of law." *Id*. (quotations omitted).

Rule 59(a)(2) of the Federal Rules of Civil Procedure provides that, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion. However, reconsideration of a judgment after its entry

is an extraordinary remedy which should be used sparingly." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quotation omitted) (en banc) (per curiam). Such a motion may be granted if the movant "demonstrate[s] that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based," or "the moving party … present[s] newly discovered or previously unavailable evidence," or "if necessary to prevent manifest injustice" or because of "an intervening change in controlling law." *Id*. (quotation omitted).

### B. Discussion

Plaintiff requests that the Court amend four statements made in the August 13 Order and add three additional findings of fact.

**1. First Request**

Plaintiff first requests an amendment to the emphasized portion of the following paragraph in the Court's findings of fact in the August 13 Order:

> On July 26, 2016, Plaintiff exchanged emails with Thereza Lopez, Calbiotech's Office Manager, wherein Plaintiff requested "a copy of our 401k plan rules." (Pl.'s Trial Ex. 17 at 1.) Lopez told Plaintiff to contact Bryan Diaz with Principal Financial, which was a "registered FINRA and SEC financial advisor who was managing [Calbiotech's] 401(k) plan" at the time. (Trial Trans. at 107.) Lopez gave Plaintiff the phone number for Bryan Diaz and said Diaz asked Plaintiff to call him. Lopez said she requested the 401(k) plan rules "from our 401(k) provider since I do not have it here on hand." (Pl.'s Trial Ex. 17 at 1.) **There is no evidence that any individual Defendant was aware of Plaintiff's July 26 request for "401k plan rules,"** and it is unclear whether Plaintiff attempted to call Bryan Diaz at the number provided, and if so, what was said or exchanged between Diaz and Plaintiff.

(ECF No. 206 at 14 (emphasis added).) Later in the August 13 Order, the Court stated:

> Plaintiff has failed to show that there is a causal link between his request for any Plan documents and the termination of his employment by Calbiotech. "While the timing of a discharge may in certain situations create the inference of reprisal," *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989), in this case, the timing of Plaintiff's pre-termination requests for Plan documents is insufficient to overcome the credible evidence showing that David Barka's stated reasons for the termination were truthful. On July 26,

2016 and August 8, 2016, Plaintiff requested "a copy of our 401k plan rules" from Calbiotech's office manager, who directed Plaintiff to Bryan Diaz of Principal Financial who managed Calbiotech's 401(k) Plan at the time. Calbiotech's office manager arranged for Plaintiff to meet in person with Diaz in the Calbiotech offices on August 10, 2016. **There is no evidence that any individual Defendant knew of Plaintiff's requests for Plan documents** or that Plaintiff ever informed anyone at Calbiotech that he was dissatisfied with the answers and/or documents he received from Diaz. Plaintiff also testified that he searched the Calbiotech intranet for Plan documents in October or November 2016, but there is no evidence that anyone at Calbiotech knew about these searches or kept a log of employee intranet searches.

*Id*. at 38 (emphasis added).

In the pending Motion to Amend Findings, Plaintiff argues that "Calbiotech, Inc. is an individual Defendant in this case" and "Calbiotech, Inc. was aware of all five of Plaintiff's 2016 requests for plan rules." (ECF No. 212 at 6–7.) When the Court stated in the August 13 Order that "[t]here is no evidence that any individual Defendant was aware of Plaintiff's July 26 request for "401k plan rules," the Court was excluding Calbiotech, which is a corporate, rather than individual, Defendant. "A corporation is a legal entity that may act only through its agents, including officers, directors, and employees." *United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1128 (C.D. Cal. 2019) (citations omitted).

As discussed in the August 13 Order, to prove his retaliation claim, Plaintiff "'must show … there is a causal link between the protected activity and the adverse employment action.'" (ECF No. 206 at 37 (quoting *Acosta v. Brain*, 910 F.3d 502, 512 (9th Cir. 2018).) As discussed in the August 13 Order, one of the reasons the Court found that Plaintiff failed to establish this causal link is because he failed to show that the individual(s) who decided to terminate Plaintiff's employment knew about Plaintiff's requests for Plan documents at the time the decision was made. *See id*. at 26 ("The Court finds that Plaintiff has failed to prove that his termination was in any way connected to, or motivated by, Plaintiff's requests for ERISA-related documents. … Indeed, the Court finds no evidence that David Barka or any other individual Defendant was aware of Plaintiff's requests for documents related to either Plan prior to the termination of Plaintiff's employment."). In the Motion

1  to Amend Findings, Plaintiff fails to point to any evidence indicating that this finding by

2  the Court was made in error. Accordingly, Plaintiff's first request for an amendment to the

3  August 13 Order is denied.

4  **2.  Second Request**

5  Plaintiff next requests an amendment to the emphasized portions of the following

6  paragraph in the Court's findings of fact in the August 13 Order:

7  **Sometime prior to December 2, 2016, Plaintiff made a complaint to the [Department of Labor ("DOL")] about Calbiotech's operation of the**

8  **401(k) Plan.** (Trial Trans. at 72–73, 103.)

9  ….

10  There is no evidence that Plaintiff had received the Calbiotech Plan documents that form the basis of his ERISA claims at the time he signed the

11  Agreement. However, one of his ERISA breach of fiduciary duty claims is based on the failure of Calbiotech to provide him with Plan documents;

12  **Plaintiff clearly knew the underlying facts of this claim when he signed the Agreement. Prior to receiving the Agreement on December 6, 2016,**

13  **Plaintiff had contacted the DOL to complain about Calbiotech's**

14  **operation of the employee benefit Plan(s).** During the Agreement's recission period, Plaintiff suspected he had grounds for litigation related to

15  Calbiotech's employee benefit Plan(s), as evidenced by his consulting two

16  lawyers, including one who specialized in ERISA law.

17

18  (ECF No. 206 at 19, 27–28 (emphasis added).) In the Motion to Amend Findings, Plaintiff

19  asserts that he complained to the DOL in 2018 rather than 2016. (ECF No. 212 at 7.)

20  The evidence at trial showed that Plaintiff complained to the DOL about Calbiotech

21  at some point in time (*see* Trial Trans. at 72–73, ECF No. 195) and that, prior to December

22  2, 2016, David Barka from Calbiotech was responding to DOL inquiries made by an

23  unidentified person (*see id*. at 103). Also at trial, David Barka was questioned by

24  Calbiotech's counsel about actions he took on December 2, 2016 pursuant to "the DOL

25  inquiry instigated by Mr. Raya." *Id*. at 247. Plaintiff did not object to this question or the

26  ensuing testimony. In the August 13 Order, the Court quoted a December 6, 2016 email

27  exchange wherein David Barka asked Plaintiff about "a request from the Dept of Labor on

28  behalf of an anonymous employee for a copy of the 401k Plan Document," and Plaintiff

responded that "I didn't request anything from the Dept of Labor. Do they have the information?" (ECF No. 206 at 22 (quoting Defs.' Trial Ex. DD at 198–99).) Despite Plaintiff's denial in his email to David Barka, there is no evidence in the record of any other Calbiotech employee expressing any interest in, or dissatisfaction with, Calbiotech's 401(k) Plan administration apart from Plaintiff. Accordingly, the Court found that the most reasonable inference from this evidence is that Plaintiff was the person who made the 2016 complaint to the DOL.

Even if this finding was mistaken, it would have no influence on the Court's conclusion that "Plaintiff clearly knew the underlying facts of this [breach of fiduciary duty] claim [based on the failure of Calbiotech to provide him with Plan documents] when he signed the Agreement" and "[d]uring the Agreement's recission period, Plaintiff suspected he had grounds for litigation related to Calbiotech's employee benefit Plan(s), as evidenced by his consulting two lawyers, including one who specialized in ERISA law." *Id.* at 27–28.[1] "Rule 52(b) motions are designed to correct findings of fact which are central to the ultimate decision, or to correct manifest errors of law." *Mills*, 2024 WL 4554094, at *1 (quotation omitted). Neither has been shown here. This request for an amendment is denied.

**3. Third Request**

Plaintiff next requests an amendment to the emphasized portion of the following paragraph in the Court's findings of fact in the August 13 Order:

> **At some point between December 1 and December 12, 2016, Plaintiff contacted attorney David Strauss about his termination from Calbiotech**. Strauss referred Plaintiff to attorney Tom Monson, who specialized in ERISA law. On December 12, 2016, Plaintiff emailed Monson, and the following day, Monson "conducted a lengthy interview" with Plaintiff. (Defs.' Trial Ex. DF at 231.)

---

[1] As discussed in the August 13 Order, these findings are relevant to the issue of whether Plaintiff knowingly and voluntarily released or waived his ERISA claims by agreeing to the Separation Agreement and General Release. (*See, e.g.*, ECF No. 206 at 29–34.)

(ECF No. 206 at 23 (emphasis added).) Plaintiff argues that he "did not contact attorney David Strauss until after December 10, 2026" and he "did not contact Mr. Strauss regarding 'his termination from Calbiotech.'" (ECF No. 212 at 7.)

Plaintiff does not dispute that he contacted attorney Strauss within the date range shown by the evidence at trial and identified in the August 13 Order, i.e., "between December 1 and December 12, 2016." (ECF No. 206 at 23.) However, Plaintiff disputes that the purpose of his contacting Strauss was "about his termination." *Id*. The record indicates that Plaintiff discussed with attorney Monson "the best way to recover [Plaintiff's] benefits [from Calbiotech]." (Defs.' Trial Ex. DF at 231.) It is implausible that Plaintiff would contact two attorneys regarding recovering benefits from Calbiotech during the Severance Agreement's recission period—and less than two weeks after his termination—and would neglect to mention the fact that he was recently terminated by Calbiotech. But even if Plaintiff confined his attorney consultations to recovery of his ERISA benefits from Calbiotech without mention of his current employment status, it would have no influence on the significance of this evidence, which is that "Plaintiff had independent advice" and "Plaintiff had an awareness of his potential claim for benefits and other relief at the time." (ECF No. 206 at 32.)[2] Accordingly, this request for an amendment is denied.

/ / /

---

[2] In the August 13 Order, when discussing the factors related to whether Plaintiff's waiver was knowing and voluntary, the Court stated in relevant part:
> The Court next considers whether Plaintiff had independent advice, such as that of counsel. During the period when Plaintiff was considering whether to accept the Agreement and/or during the Agreement's recission period, Plaintiff consulted two independent lawyers, including one who specialized in ERISA law. During Plaintiff's "lengthy interview" with the ERISA specialist, Plaintiff was focused on, in his words, "the best way to recover my benefits." (Defs.' Trial Ex. DF at 231.) Even if Plaintiff did not receive helpful advice from the lawyers he consulted (Plaintiff asserts that the ERISA specialist never followed up with him), this consultation demonstrates that Plaintiff had an awareness of his potential claim for benefits and other relief at the time.

(ECF No. 206 at 32.)

### 4. Fourth Request

Plaintiff next requests that the Court amend the August 13 Order by striking the emphasized language from the Court's findings of fact:

> The Court finds that David Barka's testimony about the reasons for terminating Plaintiff's employment was credible and accurately state Calbiotech's reasons for Plaintiff's termination. Notably, when he was informed his employment was being terminated, Plaintiff did not express bewilderment or ask for the reason for the decision; instead, **Plaintiff immediately assumed his firing was due to his disagreements with Yohannes and Yohannes' negative reports concerning Plaintiff's job performance.**

(ECF No. 206 at 25 (emphasis added).) Plaintiff contends that there was no admissible evidence at trial indicating that Plaintiff knew about Yohannes' negative reports in 2016 because the written reports were only addressed to the Barkas and some documentary evidence related to those reports were stricken as untimely produced. (ECF No. 212 at 8; ECF No. 219 at 4.)

As set out earlier in the August 13 Order's findings of fact, when David Barka first informed Plaintiff that his employment was being terminated on November 29, 2016, David Barka only told Plaintiff, "I think it's time we part ways." (ECF No. 206 at 18.) Plaintiff testified at trial that, on November 30, 2016, David Barka simply told Plaintiff that "[t]hings aren't working out." *Id*. Later on November 30, 2016, Plaintiff sent the Barkas an email which began, "I want to make sure your decision to terminate my employment is based on accurate information," and then discussed in detail "how important it is to Yonas [Yohannes] that I not do well in my position," and "attached a partial log of the hostile treatment and inappropriate behavior directed at me from Yonas [Yohannes] during the last couple of months." *Id*. (quoting Defs. Trial Ex. DA at 187). There is no evidence that anyone at Calbiotech informed Plaintiff that his termination had anything to do with Yohannes. Instead, the most reasonable inference from Plaintiff's November 30, 2016, email is that—as stated in the Court's findings of fact—"Plaintiff immediately assumed his firing was due to his disagreements with Yohannes and Yohannes' negative

reports concerning Plaintiff's job performance." *Id*. at 25. Plaintiff has offered no other explanation for why his first reaction upon learning of his termination was to email the Barkas "to make sure [their] decision to terminate [his] employment is based on accurate information," and then list his grievances with Yohannes and Yohannes' efforts to "undermine" Plaintiff. *Id*. at 18. This request for an amendment is denied.

### 5. Fifth Request

Plaintiff requests that the Court add a finding that "[Bryan] Diaz was never in possession of any retirement Plan Documents at any time between 2008 and 2016." (ECF No. 212 at 9.) In support of this request, Plaintiff relies on Calbiotech listing four individuals—but not Diaz—in response to an interrogatory during discovery asking for "all Record Keepers and all Third Party Administrators who have been in possession of" Calbiotech's 401(k) Plan and Pension Plan documents between 2008 and 2016. *Id*. at 8–9.

As the Court found in the August 13 Order, when Plaintiff requested "a copy of our 401k plan rules" on July 26, 2016, Calbiotech's Office Manager gave Plaintiff the phone number for Bryan Diaz—who was managing Calbiotech's 401(k) Plan at the time—and "it is unclear whether Plaintiff attempted to call Bryan Diaz at the number provided, and if so, what was said or exchanged between Diaz and Plaintiff." (ECF No. 206 at 14.) Calbiotech's Office Manager also arranged for Plaintiff to meet in person with Diaz at the Calbiotech offices on August 10, 2016, stating that Diaz "should be bringing a copy [of the 401(k) Plan documents] with him." *Id*. at 15. The Court found that there is no evidence of what was said or exchanged between Diaz and Plaintiff or that Plaintiff informed anyone at Calbiotech that he was dissatisfied with the answers and/or documents he received from Diaz. *See id*. at 15, 38. The Court further found that "it is not clear from the evidence that Plaintiff's requests for the '401k plan rules' on July 26, 2016 and August 6, 2016 were not adequately addressed by his meeting with [Bryan] Diaz at the Calbiotech offices on August 10, 2016." *Id*. at 33–34.

The Court does not find that Plaintiff's citation to an interrogatory response—which was objected to at the time by Calbiotech—changes the Court's findings based upon the

evidence presented at trial. Moreover, Plaintiff fails to explain how his requested additional finding would alter the result of any conclusion of law reached by the Court in the August 13 Order or any prior dispositive order. Plaintiff's request to add a finding regarding whether Plan documents were in Diaz's possession is denied.

**6. Sixth Request**

Plaintiff requests that the Court find that "Defendants had a legal obligation to communicate with the California Employment Development Department (EDD) if they knew Plaintiff's stated reason for termination ('my position was eliminated') [in his application for unemployment benefits] to be incorrect." (ECF No. 212 at 9.)

In the August 13 Order, the Court stated:

> The Court finds that David Barka's testimony about the reasons for terminating Plaintiff's employment was credible and accurately state Calbiotech's reasons for Plaintiff's termination.... [T]he Court determines that, based upon all of the testimony and evidence, David Barka reasonably believed he was justified in firing Plaintiff based upon Plaintiff's poor job performance. Plaintiff asserts that, a month after the firing, David Barka told Plaintiff to say on his application for unemployment benefits that his position was eliminated. If true, the Court does not find that this significantly undermines the credibility of David Barka's testimony as to the reasons for his decision to terminate Plaintiff. Instead, the Court finds that Plaintiff (and David Barka, if he made the representation) understood the statement on Plaintiff's unemployment application to be a statement designed to facilitate Plaintiff receiving unemployment benefits.[3]

(ECF No. 206 at 26; *see also id*. at 38 ("[T]he Court finds that, even if this testimony was true, neither David Barka nor Plaintiff believed this reason to be anything other than a reason designed to facilitate Plaintiff's receipt of unemployment benefits.").)

---

[3] There is no evidence that David Barka or anyone at Calbiotech stated or affirmed to the California Employment Development Department ("EDD") or any other government agency that Plaintiff's position was eliminated. Plaintiff's Trial Exhibit 23 is a Notice of Unemployment Insurance Claim sent to Calbiotech by the EDD on January 23, 20217, stating that Plaintiff filed a claim and stated on his application for benefits that "my position was eliminated." There is no evidence in the record of Calbiotech's response to this Notice.

1    There is no claim in this case against either Calbiotech or Plaintiff for fraud related

2    to unemployment benefits. The evidence related to what was said on Plaintiff's application

3    for unemployment benefits was relevant in this case solely as it relates to the credibility of

4    the witnesses and whether Calbiotech's stated reasons for terminating Plaintiff's

5    employment were credible or pretextual. In the August 13 Order, the Court addressed the

6    evidence related to Plaintiff's application for unemployment benefits in this context, *see*

7    *id*. at 22–26 & 38, and ultimately concluded that "the evidence does not show any causal

8    link between Plaintiff's ERISA-protected activity and the termination of Plaintiff's

9    employment." *Id*. at 39. Plaintiff has not stated any other basis for the relevance of this

10   requested additional finding. Plaintiff's request to add any additional findings related to his

11   application for unemployment benefits is denied.

12   **7. Seventh Request**

13   Finally, Plaintiff requests that the Court "find that the signatures from the 2015

14   401(k) Plan are photocopied from the 2011 Pension Plan" and that "David Barka falsely

15   testified that the two sets of signatures are not copies of each other and that he executed

16   the 2016 plan in 2016 or 2017." (ECF No. 212 at 10.)

17   The Court addressed this contention by Plaintiff in the August 13 Order:

18
     Plaintiff has identified anomalies with Calbiotech's 401(k) Plan
19   documents, which he contends demonstrates that the 2015 Summary Plan
     Description and other documents were fraudulent. During his trial testimony,
20   David Barka credibly testified that he did not know the reason for two
     apparently identical documents having different dates, and his "best guess"
21   was that it was "a typo" in documents prepared by Calbiotech's then-new
     third-party administrator, Dianne Simmons with Crown Benefits. (Trial
22   Trans. at 247.) David Barka credibly testified that he believed Simmons
     "corrected her own mistake in the file after accumulating the documents in the
23   [third-party administrator] file that she was taking over [from Calbiotech's
     prior third-party administrator]." *Id*. at 253. The evidence showed that during
24   this time period the following events were occurring: Simmons was taking
     over duties as third-party administrator; Simmons was diagnosed with cancer
25   and began undergoing treatment; Calbiotech was in the process of moving to
     from a 9,000-square-foot facility in Spring Valley, California, to a 24,000-
26   square-foot facility in El Cajon, California; and Calbiotech was undergoing a

27

28

19-cv-2295-WQH-AHG

due diligence investigation related to the sale of the company. David Barka credibly testified that some combination of these circumstances led to the failure of Calbiotech to discover the "typo" until this litigation. David Barka also credibly testified that he was not aware that the administrative record provided by Calbiotech to Plaintiff during litigation was not complete and accurate. After considering all of the evidence presented, the Court finds that Plaintiff has failed to prove that any individual Defendant or employee or agent of Calbiotech intentionally attempted to mislead Plaintiff or conceal the existence of a claim against any Defendant.

(ECF No. 206 at 27.)

In the Motion to Amend Findings, Plaintiff does not address the Court's finding above or state any other basis for the relevance of his requested additional finding related to the 2015 401(k) Plan. Plaintiff's request to add additional findings related to the 2015 401(k) Plan is denied.

The Motion to Amend Findings is denied. (ECF No. 212.)

## III.    Motion for Fees

### A. Legal Standard

"Under ERISA § 502(g), a district court has discretion to award reasonable attorney's fees." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing 29 U.S.C. § 1132(g)). Attorney's fees may be awarded to "either party." 29 U.S.C. § 1132(g)(1). A "fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quotation omitted). "Only after passing through the 'some degree of success on the merits' door is a claimant entitled to the district court's discretionary grant of fees under § 1132(g)(1)." *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (quoting *Hardt*, 560 U.S. at 255).

"In the Ninth Circuit, the discretionary decision to award fees has traditionally been governed by the five factors set forth in *Hummell* [*v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)]." *Id*. The *Hummell* factors are as follows:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453 (citations omitted). "[T]hese factors provide a helpful guideline to … district courts," and "after determining a litigant has achieved some degree of success on the merits, district courts must … consider the *Hummell* factors before exercising their discretion to award fees under § 1132(g)(1)." *Simonia*, 608 F.3d at 1121. The Ninth Circuit has stated that, "[w]hen we apply the *Hummell* factors, we must keep at the forefront ERISA's remedial purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans.'" *McElwaine v. U.S. W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (quoting *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984)). However, the Ninth Circuit has also stated that courts should not "favor one side or the other in ERISA fee cases. The statute is clear on its face—the playing field is level." *Est. of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997). A court's "analysis in this case must focus only on the *Hummell* factors, without favoring one side or the other." *Id*. Thus, the Ninth Circuit's cases "reflect a recognition of both the remedial purpose of ERISA on behalf of beneficiaries and participants, as well as the clear statutory language that makes fees available to 'either party.'" *Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Loc. Union No. 675 v. Foster*, 332 F.3d 1234, 1240 (9th Cir. 2003) (quoting 29 U.S.C. § 1132(g)(1)).

**B. Discussion**

There is no dispute that Defendants achieved at least "some degree of success on the merits." *Hardt*, 560 U.S. at 255. Therefore, the Court proceeds to consider whether a discretionary grant of Defendants' fees under § 1132(g)(1) is warranted based upon an analysis of the *Hummell* factors.

The first *Hummell* factor requires the Court to consider the degree of Plaintiff's culpability or bad faith. Defendants contend that Plaintiff's bad faith and/or culpability is demonstrated by Plaintiff's initiating and maintaining this lawsuit after signing the Release Agreement and accepting payment of the $12,500 that Calbiotech paid as consideration for Plaintiff's release of claims. Although the Court held that the Release Agreement was enforceable and Plaintiff knowingly and voluntarily waived his ERISA claims against Defendants, the Court found that some of the relevant factors weighed against this finding. (*See* ECF No. 206 at 29–34.) Despite the Court's ultimate conclusion after balancing all relevant factors, the Court does not find that Defendants have produced evidence that Plaintiff demonstrated culpability or bad faith in litigating this case. Instead, it appears Plaintiff maintained a reasonable belief in this litigation that he could prove an actionable ERISA claim. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000) ("[I]n order to avoid a finding of bad faith under the *Hummell* factors, plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim."). The Court finds that this factor weighs against an award of fees.

The second factor requires the Court to consider the ability of Plaintiff to satisfy an award of fees. Defendants request "the nominal sum of $50,000 in attorneys' fees," despite asserting that their actual fees totaled $852,560.50. (ECF No. 209-1 at 1, 14.) Defendants contend that Plaintiff can afford such an award based upon Plaintiff's testimony at trial that he has been employed since his termination from Calbiotech. Plaintiff disputes that Defendants have shown he has the ability to pay a $50,000 fee award. At trial, Plaintiff testified that he has been employed since his 2016 termination from Calbiotech, but his testimony does not indicate the dates of this post-2016 employment or how much he earned from this employment. (*See, e.g.*, Trial Trans. at 213–15, ECF No. 195.) The record is silent as to Plaintiff's ability to satisfy an award of fees. The Court finds that this factor is neutral.

The third factor is whether an award of fees against Plaintiff would deter others from acting under similar circumstances. Defendants contend that "an award of attorney's fees is not only appropriate but wholly warranted under these particular circumstances in order

1  to help deter similarly situated future plaintiffs from engaging in this sort of reprehensible

2  conduct in the future." (ECF No. 209-1 at 22.) Plaintiff contends that "[a]ny fee awarded

3  to defendants will only serve to deter other suits brought against defendants in good faith

4  and would act as a disincentive to any potentially meritorious ERISA action." (ECF No.

5  216 at 5.) There are cases in which "awarding attorney's fees to [a prevailing defendant]

6  will serve the purposes of ERISA by discouraging other litigants from relentlessly pursuing

7  groundless claims." *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.*,

8  25 F.3d 743, 748 (9th Cir. 1994). However, the Court finds no evidence that Plaintiff, who

9  was proceeding pro se, believed his claims to be groundless or otherwise acted in bad faith

10  or in a "reprehensible" manner in this litigation, even if the Court ultimately found in favor

11  of Defendants as to Plaintiff's claims. As discussed in prior Orders, some of Plaintiff's

12  claims survived multiple motions for summary judgment by Defendants and warranted a

13  bench trial. (*See, e.g.*, ECF Nos. 114 & 144.) While surviving to trial does not insulate a

14  plaintiff from being ordered to pay defense attorney's fees, the Court finds it a relevant

15  factor in this case given the lack of evidence that Plaintiff relied upon knowing

16  misrepresentations in the pretrial motions. *Cf. Credit Managers Ass'n of S. Cal.*, 25 F.3d

17  at 749 (affirming an award of defense attorney's fees under ERISA when "[t]he district

18  court made clear that its decision to allow the case to proceed to trial was based primarily

19  on misrepresentations made by [plaintiff] and its counsel regarding the facts that it could

20  prove"). Given the lack of evidence of bad faith on Plaintiff's part and the issues of fact

21  raised by Plaintiff as to some claims at summary judgment, the Court finds that this factor

22  weighs against an award of fees.

23        The fourth factor is "whether the parties requesting fees sought to benefit all

24  participants and beneficiaries of an ERISA plan or to resolve a significant legal question

25  regarding ERISA." *Hummell*, 634 F.2d at 453. The Ninth Circuit has stated that the fourth

26  factor and the third factor typically "are 'more appropriate to a determination of whether

27  to award fees to a plaintiff than a defendant.'" *Tingey v. Pixley-Richards W., Inc.*, 958 F.2d

28  908, 910 (9th Cir. 1992) (quoting *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 719 (7th

19-cv-2295-WQH-AHG

1  Cir. 1981)); *see also id*. ("We see little benefit to be had by charging individual plan-
2  beneficiary plaintiffs like the Tingeys with costs for policy reasons that speak more
3  appropriately to institutional litigants in the ERISA arena."). To the extent this factor is
4  relevant in this case, the Court is aware of no evidence that Defendants sought to benefit
5  other participants and beneficiaries of an ERISA plan and the Court does not find it likely
6  that this case "will resolve a significant legal question regarding ERISA." *Hummell*, 634
7  F.2d at 453. To the extent this factor is relevant in this context, the Court finds that it weighs
8  against an award of fees.

9  Finally, the Court considers the relative merits of the parties' positions. The Court
10 has addressed the merits of the parties' positions in numerous orders, culminating in the
11 August 13 Order. For the reasons stated in those orders, the Court finds that this factor
12 weighs in favor of an award of fees.

13 After considering and weighing the relevant factors, the Court finds that an award
14 of fees is not warranted in this case. The Motion for Fees is denied.[4]

## IV. Conclusion

IT IS HEREBY ORDERED that the Motion to Amend Findings is denied (ECF No. 212), and the Motion for Fees is denied (ECF No. 209).

Dated:  March 10, 2025

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

---

[4] The Motion for Fees references Defendants' separate Application for Bill of Costs (*see* ECF No. 209 at 2 (citing ECF No. 208)), which was granted in part by the Clerk of Court pursuant to Federal Rule of Civil Procedure 54 on September 17, 2024. (ECF No. 214.) No party has filed a motion to review the Clerk's Order Taxing Costs. *Cf*. Fed. R. Civ. P. 54 (d)(1) ("The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action."). Accordingly, the Court does not consider costs in this Order.